

PAID

FEB - 2 2023

FILED

2023 FEB -2 PM 2:47

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY___ **rsm**

1  Professor Marquessa Margolin, LL.B, LL.M
2  Human Rights Commission
   865 Comstock Ave, Suite 6B
3  Los Angeles, CA 90024
   P | (424) 382-8277
4  W | www.hrcinternational.org
   E | marquessa@hrcinternational.org
5
6  *For and on behalf of Plaintiff, Marquessa Margolin*

7            **UNITED STATES DISTRICT COURT**

8            **CENTRAL DISTRICT OF CALIFORNIA**

9  MARQUESSA MARGOLIN                    Case No: **2:23-CV-00805-SSS-AFM**
10                 PLAINTIFF
11 vs.
                                         **CIVIL RIGHTS COMPLAINT**
12 THE HONORABLE GUS T. MAY,             **PURSUANT TO 42 U.S.C §1983**
   Los Angeles Superior Court Judge,
13 LOS ANGELES COUNTY SUPERIOR
   COURT for the State of California,
14 COMMISSION ON JUDICIAL
   PERFORMANCE, DOES 1-10.
15
16                 DEFENDANTS
17

18  1. This case involves the most serious and heinous form of judicial misconduct
19     and constitutional and civil rights violations by a Los Angeles Superior Court
20     Judge this court has ever seen.
21  2. Hon. Gus May of the Los Angeles Superior Court has found himself in the
22     perfect storm; lack of subject matter jurisdiction compounded with
23     unconstitutional void orders entirely unprotected by judicial immunity,
24     prosecutable by the United States Department of Justice Civil Rights Division
25     and Los Angeles District Attorney, Justice System Integrity Division.
26  3. This case involves a Los Angeles Superior Court Judge the Hon. Gus May
27     egregiously seeking to falsely declare an Australian resident and citizen,
28     deceased on or before December 1, 2015, as a discovery sanction.

1

4.  Hon. Gus May's proposed order of death on or before December 1, 2015, is not based on any evidence of death, rather as a discovery sanction for refusing to accede to the subject matter jurisdiction of the Los Angeles Superior Court, Probate Division as instructed by Norma Hannaford's Queensland, Australian attorneys, McLaughlin's Lawyers Australia (**Exh. A**).

5.  Commission on Judicial Performance is a named defendant in this action, to the extent plaintiff seeks declaratory judgment that defendants use of an order establishing fact of death, as a discovery sanction, constitutes violation(s) of the Fourteenth Amendment of the United States Constitution, violation of California Constitution Article I §7, violation of 42 U.S.C §1983 and violations the California Code of Judicial Ethics, as amended by the Supreme Court of California on July 1, 2020.

6.  Commission on Judicial Performance have only recently taken interest in this case to avoid an avalanche of bad press after the Los Angeles Times and KCAL9 news contacted their office for an official statement regarding this controversy which involves famous Australian actress, Susan Hannaford and her iconic luxury private residence known as the Palazzo Beverly Hills.

7.  There can be no court order more serious and final than an order of fact of *death* yet unbelievably an order establishing fact of death is not one of the orders listed as directly appealable under Cal. Prob Code. §1300-1304.

8.  Consequently, the probate statutes in California permitting the severe deprivation of *life*, the entire essence of human existence, are wholly unconstitutional because California Probate Code §200;

    (1) deprives *life*, liberty and property; and

    (2) fails to provide a post-deprivation remedy; and

    (3) fails to provide a direct appellate remedy to vacate or annul an erroneous or void order establishing fact of death.

9.  There is no judicial safeguard or gatekeeper to justice, other than commencing an action before the United States District Court, Central District of California, as to defendants, Los Angeles Superior Court for the State of California, Judge Gus T. May seeking this court order declaratory judgment, declaring:

> (1) Cal. Probate Code §200 depriving **life**, liberty and property with no direct appellate remedy is in violation of the Fourteenth Amendment of the United States Constitution, due process and equal protection clauses, and therefore invalid; and
>
> (2)  Norma Hannaford **did not** die on or before December 1, 2015

10. In the landmark decision on a Petition to Establish Fact of Death, Ross, J. McKinstry, Sharpstein JJ; Myrick J., and Chief Justice Morrison, concurred "…if after passing on these facts, taking cognizance of the case, the order of the Court could, at any period in ***any collateral proceeding***, be avoided by evidence that the decedent ***did not reside, or die, or leave estate*** in the commonwealth." *(Stevenson v. Superior Court of San Francisco* (1882) 62 Cal. 60, 61).

11. In the state court action, the undisputed facts are (1) objector, Norma Hannaford is Australian citizen and Australian resident, similarly, petitioner Brett Hannaford is an Australian citizen and Australian resident, neither are resident nor domiciled in the State of California presently, or at the time of alleged fact of death on or before December 1, 2015 (**Exh. A**) (2) there is no evidence of death (nor could there be, as Norma Hannaford is not deceased) and (3) there is no evidence of any real property held by Norma Hannaford, in the State of California at the time of alleged death, each of which are mandatory statutory jurisdictional prerequisites under Cal. Prob Code §200 for defendants, Los Angeles Superior Court and Judge Gus. T. May to exert probate jurisdiction.

12. All three *Stevenson* elements (no residency, no death and no estate) each of which independently divest the Los Angeles Superior Court, Probate Division and Judge Gus T. May of subject matter jurisdiction, are present in this case. ///

13. Cal. Prob Code §200 provides:

> "If title to, or an interest in, real property is affected by death of a person, another person who claims an interest in the property may commence proceedings pursuant to this chapter to establish the fact of death."

14. Judge Gus T. May disregarded the fundamental legal principle that once lack of subject matter jurisdiction is challenged, the burden is placed on the party asserting that jurisdiction exists.

15. Accordingly, the court *must* presume lack of subject matter jurisdiction until the plaintiff *proves* otherwise in response to the motion to dismiss (*Kokkonen v. Guardian Life Ins. Co of Am.,* 511 U.S 375, 377 (1994). Merely alleging, in an unverified pleading, without evidence, that Norma Hannaford died sometime on or before December 1, 2015, with title to, or interest in real property in the State of California, is wholly insufficient to meet its burden to establish subject matter jurisdiction under Cal. Prob Code §200.

16. "The burden [to establish jurisdictional facts with evidence] must be met by competent *evidence* in affidavits and authenticated documents." (*Nobel Flora, Inc., v. Pasero* (2003) 106 Cal.App.4h 657-658).

17. On a motion to dismiss for lack of subject matter jurisdiction, absent affirmative evidence of death (which does not exist) and affirmative evidence of title to, or interest in, real property in the State of California, at the time of alleged death (which also does not exist) petitioner could not possibly meet this burden, and as such, there is no subject matter jurisdiction of the Los Angeles Superior Court, Probate Division and the petition must be dismissed.

## I.
## **RESPONDNTS LACK OF JURISDICTION**

18. As a preliminary matter, there are two jurisdictional issues that pierce the doctrine of judicial immunity, that is, the clear absence of both in personnam and subject matter jurisdiction of the respondents, Judge Gus T. May and the Los Angeles Superior Court, Probate Division (collectively "probate court").

19. "The principle of judicial immunity **only** applies when there is jurisdiction of both subject and person."(*Rankin v. Howard* (9th Cir. 1980) 633 F.2d 844,846).

20. In the state court action, there is neither.

4

21. "**When a judge knows that he lacks jurisdiction or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, judicial immunity is lost.**" (*Rankin, Id)*. It is black letter law, that purported judicial acts and orders, in the clear absence of all jurisdiction are void *ab initio*, entirely unprotected by judicial immunity.

22. Judge Gus T. May was fully aware from the pleadings filed in the action, that Norma Hannaford appeared on prime time television on the Australian news network, Channel Nine News, in an hour long special about her daughter, actress Susan Hannaford in mid-2018, several years after the fraudulent death which Judge Gus T. May threatened to declare on or before December 1, 2015.

23. At the time of the December 5, 2022 court order, Judge Gus T. May had full knowledge that the fact of death petition was a fraud upon the court, that there was no death, and no jurisdiction of the probate court based on judicially noticed undisputed recorded Grant Deeds signed by Norma Hannaford in the presence of a Notary Public, filed with the Los Angeles Superior Court on September 21, 2022, indisputably evidencing Norma Hannaford did not pass away as knowingly falsely alleged and holds no title to, or interest in the properties referenced in the petition.

24. These undisputed judicially noticed Grant Deeds, signed by Norma Hannaford in the presence of a Notary Public, years after the fraudulent "fact of death" served as indisputable evidence of proof of life, rendering the petition *void*.

25. Given, Cal. Prob Code §200 expressly foreclosed all jurisdiction of the probate court, absent two **mandatory** jurisdictional prerequisites, evidence of an actual fact of death and evidence of title to, or interest in property at the time of death, and as neither jurisdictional prerequisite was before the court, Judge Gus T. May acted in the clear and complete absence of all jurisdiction.

26. The Supreme Court and Court of Appeal have extensively addressed this jurisdictional test "...until there is death, there is no subject matter jurisdiction of any court...the fact that a supposed intestate is alive, when shown, establishes the **nullity of the entire proceedings** *(Stevenson v. Superior*

*Court of San Francisco* (1882) 62 Cal. 60, 61).

27. Unlike presumption of death codified under Cal. Prob Code §12401, the legal standard for *fact* of death under Cal. Prob Code §200 mandates: "…the fact of death and the place of residence of the deceased at the time of death… must be true in point of fact, and when they do not both exist in point of fact the proceedings are utterly void and not voidable" (*Beckett v. Selover* (1857) 7 Cal. 215, 228.)

28. Independently of the issue of life and death, probate court lacks fundamental subject matter jurisdiction, when, as here, "the claim does not involve any property of a decedent, and any order made under those circumstances is void". [*Estate of Post* (2018) 24 Cal.App.5th 984, 991-992, 234 Cal. Rptr. 3d 661; *See also;* Cal. Prob Code §200].

29. Cal. Prob Code §200 is clear, subject matter jurisdiction of the court may only be conferred upon evidence of an *actual* death *and* only "if **title to**, or an **interest in** real property is affected by the death of a person".

30. Simply put – when Norma Hannaford eventually passes away, there is no title to, or an interest in, real property, that is, or would be "affected by death", as such, there can be no probate jurisdiction.

31. The Supreme Court of California expounded upon this fundamental legal tenet "..until there is an *actual death* there is no subject matter for the jurisdiction of any court" ruling that subject matter jurisdiction of the probate court is entirely dependent on "whether the decedent held property in the State of California at the time of death." (*Stevenson v. Superior Court of San Francisco* (1882) 62 Cal. 60, 63) Neither jurisdictional fact exists in this case.

32. Unlike a court of general jurisdiction, probate court does not have personal jurisdiction, rather probate is an *in rem* proceeding, jurisdiction is limited to the 'res', which is any real property held by the decedent at the time of death.
///

33. In a Petition to Establish Fact of Death proceeding, there is no personal or *"in personam"* jurisdiction over an alleged decedent and "there is no authority that probate jurisdiction may be based on an individual's contacts with California...nor is there authority that would permit a California court to exercise probate jurisdiction as a matter of equity"(*Estate of Sally Ann Foote* (June 28, 2011, No. D058106) Cal.App.4th [2011 Cal. App. Unpub. 4845, at 26); *See also; Estate of Jimenez* (1997) 56 Cal.App. 4th 733, 739-730).

34. Moreover, probate court may not exert personal jurisdiction over an alleged decedent, as an alleged decedent is not a party to the action, rather an objector to the proceedings, nor can subject matter jurisdiction be conferred by general appearance, consent, waiver, or estoppel (*Estate of Post* (2018) 24 Cal.App.5th 984,984 [234 Cal.Rptr.3d 6611]).

35. Traditionally, the courts differentiate between judgments *in personam* and *in rem* on the basis that a judgment *in personam* imposes personal liability or obligation on one person in favor of another, whereas a judgment in rem affects the interests of all persons in designated property.

36. A Petition to Establish Fact of Death under Cal. Prob Code §200 is an *in rem* proceeding and "although the probate court has all the powers of the superior court when considering cases brought before it under the California Probate Code, its jurisdiction is limited in the sense it exercises **only** such powers over *decedents' estates* as conferred upon it by statute"(*See Estate of Buckley* (1982) 132 Cal.App.3d 434, 444)".

## II.
## JUDGE MAYS VIOLATION OF THE HAGUE CONVENTION AND INTERNATIONAL DISCOVERY LAW

37. As expounded above, an alleged "decedent" cannot be a party to any action. Norma Hannaford is a non-party objector to the Petition to Establish Fact of Death and appears for the limited purpose of seeking dismissal for lack of subject matter jurisdiction.

///

38. It is well established that in order to compel a non-party foreign resident to appear before the Los Angeles Superior Court, the court must comply with the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters as prescribed under Cal. Civil Code Proc. §2027.010

    "(c) If a deponent is not a party to the action…a party serving a deposition notice under this section shall use any process and procedures required and available under the **laws of the foreign nation** where the deposition is to be taken to **compel the deponent to attend and to testify…**"

39. If the court seeks to compel Norma Hannaford to engage in extraterritorial discovery or examination before the Los Angeles Superior Court, the court must comply with international law, including the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters which under Australian law requires an order from an Australian Judge.

40. Ultimately, the Australian Supreme Court will need to be satisfied that the procedural requirements prescribed under Australian law have been followed and that the Los Angeles Superior Courts order to compel attendance of an Australian resident in a United States action, is made for a legitimate purpose.

41. Judge May's December 5, 2022 order, in the absence of all subject matter jurisdiction, attempting to exert personal jurisdiction over Norma Hannaford, a non-party objector, and an Australian citizen and Australian resident, whilst threatening a foreign citizen with a false and fraudulent declaration of *death* as a discovery sanction for refusing to accede to the jurisdiction of the Los Angeles Superior Court, is a serious violation of International Human Rights Law including the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters and the California Code of Judicial Ethics.

### III.
### LOS ANGELES SUPERIOR COURT, PROBATE DIVISION
### FRAUDULENT ACQUISITION OF SUBJECT MATTER JURISDICTION

42. As expounded above, it is black letter law that probate jurisdiction is an *in rem* proceeding that is limited and statutory. For the respondent Los Angeles

Superior Court, Probate Division, Judge Gus T. May to exert subject matter jurisdiction under Cal. Prob Code §200, there are two **mandatory** statutory jurisdictional prerequisites, the burden of jurisdiction is upon the petitioner in the state court action to establish (1) evidence of fact of death, including date, place and time of death and (2) evidence of title to, or interest in, real property in the State of California, at the time of death (Cal. Prob Code §200; *Stevenson v. Superior Court of San Francisco; Id.*)

43. On December 5, 2022, Los Angeles Superior Court, Judge Gus T. May, falsely, fraudulently, corruptly, and maliciously intended to give a color of jurisdiction by ignoring and directly contradicting the defamation order of Judge John P. Doyle dated July 2, 2020 in denying anti-SLAPP ruling:

> "…there is also evidence that Norma **did not** pass away….
> she pursued a personal injury lawsuit in 2015". (**Exh B**)

44. Judge Gus T. May further ignored the Declaration of W. Michael Hartman esq., an attorney with over forty years of good standing with the State Bar of California attesting under penalty of perjury to have also recently personally met with Norma Hannaford.

45. Judge May further ignored indisputable judicially noticed and recorded Grant Deeds signed by Norma Hannaford and acknowledged by a Notary Public, several years after the fraudulent date of fact of death, unequivocally establishing Norma Hannaford did not die on or before December 1, 2015, and holds no title to, or interest in any real property in the State of California, rendering the fact of death petition a nullity and *void ab initio*.

46. Judge Gus T. May also disregarded Norma Hannaford's Heritage Bank Australia credit card statements reflecting Norma Hannaford's daily credit card activity evidencing Norma Hannaford is resident and domiciled Surfers Paradise, Queensland, Australia, including on the relevant date of [false] death on December 1, 2015, and despite the overwhelming incontrovertible evidence

proving life, on December 5, 2022, Judge May egregiously, corruptly and maliciously sought to grant an order establishing fact of death of an Australian citizen and Australian resident, on or before December 1, 2015, with no evidence of death, as a discovery sanction for refusing to accede to the subject matter jurisdiction of the Los Angeles Superior Court, Probate Division.

47. On September 21, 2022, Norma Hannaford's United States attorneys, Carlson & Cohen LLP moved swiftly and filed a Motion for Summary Judgment ("Motion to Dismiss") for lack of subject matter jurisdiction under Cal. Prob Code §200 based on no death, no title to or interest in any real property in the State of California, and no residency or domicile in the State of California.

48. "On a motion to dismiss for lack of subject matter jurisdiction, *the party asserting jurisdiction* has the burden of proving the facts that give the Court jurisdiction, by a preponderance of the evidence". *(Nobel Flora, Inc., v. Pasero* (2003) 106 Cal.App.4h 654, 657*).* "The burden must be met by competent *evidence* in affidavits and authenticated documents." (*Id.* At 657-658.)

49. Judge Gus T. May was required to presume lack of subject matter jurisdiction until such time as *Petitioner,* Brett Hannaford met his burden by demonstrating with competent *evidence*, an actual death, including date and place of death and ownership of property at the date of death, in order to overcome the presumption of lack of subject matter jurisdiction on a motion to dismiss.

50. No evidence whatsoever has been filed by the petitioner, Brett Hannaford.

51. Similarly, the burden of proof to establish fact of death rests at all times upon the person asserting death. Norma Hannaford is under no obligation to prove she did not die on or before December 1, 2015, and whilst overwhelming indisputable evidence has been provided entirely defeating the fact of death petition, it was never Norma Hannaford's legal burden to begin with.

///

52. To the contrary, establishment of *fact* of death under Cal. Prob Code §200 unlike the missing person presumption of death codified under Cal. Prob Code §12401 (which is adjudicated under the unexplained absence standard) "***must*** be by clear, positive and direct evidence of death".

53. Petitioners counsel, Mr. Behrendt admitted on the record that petitioner lacked standing to bring the petition under Cal. Prob Code §12401 based on the fact petitioner is an Australian citizen, resident and domiciled in New South Wales, Australia, and based on petitioners' thirty-year estrangement with Norma Hannaford, Brett Hannaford is not a person "likely to have seen or heard from Norma Hannaford within the continuous past five years".

54. No evidence, no death certificate, and no declaration or affidavit was filed in the knowingly false, malicious and procedurally defective fact of death petition.

55. Judge Gus T. May was fully aware of the fraudulent and procedurally defective nature of the petition yet falsely, fraudulently, corruptly, and maliciously intended to give a color of jurisdiction to the sham fact of death petition, in that Judge Gus T. May:

    (1) reversed the burden of proof requiring Norma Hannaford prove lack of subject matter jurisdiction of the probate court; and

    (2) reversed the burden of proof requiring Norma Hannaford prove she did not die on or before December 1, 2015.

56. On November 7, 2020, Carlson & Cohen LLP gave notice to petitioner's counsel, Kevin Behrendt to dismiss the petition based on notarized and recorded proof of life (CCP §128.7(b)(3) rendering the petition void and a nullity and based on lack of subject matter jurisdiction (CCP §128.7(b)(2)) and on the basis the knowingly false fact of death petition was brought for a malicious and improper purpose in violation of Cal. Civil Code Proc.§128.7(b)(1).

57. A true and correct copy of the Carlson & Cohen LLP Demand for Dismissal based on lack of jurisdiction is attached as **Exh. C.**

11

58. Judge May was fully aware that the undisputed notarized and recorded, and judicially noticed Uninsured Deed Affidavits dated August 18, 2016, signed by Norma Hannaford in the presence of a Notary Public, disproved the fraudulent fact of death petition, and entirely relinquished any "title to or interest in" the properties referenced in the petition, as the notarized affidavit states:

**"I have no present, future or contingent interest in the property**."

**"I am not an owner, director or shareholder of Zenith Development Inc**."

59. It is both statutory and black letter law, "…when an instrument conveying real property is acknowledged [by a Notary Public], it may be read into evidence without further proof, and when recorded, its genuineness and due execution are presumed (Cal. Civil Code §1451; (*Thomas v. Peterson* (1931) 213 Cal. 672, 673 [3 P.2d 306].)

60. Judge May's December 5, 2022 order seeking to, without evidence, falsely declare Norma Hannaford deceased on or before December 1, 2015, operates to fraudulently give a color of jurisdiction by retrospectively attempting to void countless notarized and recorded business documents, including without limitation, attempting to void undisputed notarized Grant Deeds, real estate purchase and sale transactions, stock, forex, checking, savings, and retirement accounts, including retrospectively voiding Power of Attorney and Power on Death banking instructions, custodial accounts, testamentary instruments, placing hundreds of millions of dollars of international third-party Australian assets corruptly within the potential, albeit fraudulent, jurisdictional reach of the Los Angeles Superior Court, Probate Division.

61. A fraudulent retrospective order establishing fact of death on or before December 1, 2015, would be one of the most egregious financial crimes committed by a judicial officer in the history of the Los Angeles Superior Court.

62. For example, the two Grant Deeds signed by Norma Hannaford in the presence of a Notary Public on April 26, 2017, for 865 Comstock Ave, Unit 6B, Los Angeles, CA 90024 and 13200 Mulholland Drive, Beverly Hills, CA 90210; the two properties referenced in the petition, would be potentially void if

Norma Hannaford were fraudulently and falsely retrospectively declared dead on or before December 1, 2015, as there can be no delivery let alone acceptance of a Grant Deed, executed by a *decedent*.

63. Similarly, the Uninsured Deed Affidavits dated August 18, 2016, signed by Norma Hannaford in the presence of a Notary Public, whereby Norma Hannaford, specifically attested to no present, future or contingent interest in the properties referenced in the petition, entirely divesting probate court of all jurisdiction under Cal. Prob Code §200, would also be potentially void, if Norma Hannaford were fraudulently and falsely retrospectively declared dead on or before December 1, 2015, as there can be no contract signed by a *decedent*.

64. The same legal principle applies to Australian bank accounts, stock and forex trading accounts, property purchase acquisitions, property sale agreements, commercial lease agreements, custodial accounts, real property contracts, the consequences of a fraudulent decree and order of fact of death are far and wide reaching.

## IV.
## LOS ANGELES SUPERIOR COURTS
## DISOCVERY SANCTION OF DEATH IS VOID AB INITIO

65. Cal. Rules of Court outline the requirements that must be included with the Petition to Establish Fact of Death under Cal. Prob. Code 200 (terminate a joint tenancy or life estate) must include a date, place and time of death and shall include "(A) a copy of any instrument related to any interest in property and (B) a copy of the death certificate". (Cal. Shasta Cty. Super. Ct. R. 15.12; Cal. Colusa Cty. Super. Ct. R. 15.11; Cal. San Diego Cty. Super. Ct. R. 4.9.3)

66. Notwithstanding lack of jurisdiction, a fraudulent order establishing fact of death under Cal. Prob Code §200, with no death certificate, and without any evidence of death, that overbroadly stating a person died sometime "on or before December 1, 2015" is void for uncertainty.

67. Under Cal. Prob Code §200, there can be no jurisdiction without a date of death that co-exists with title to, or interest in real property in the State of California

13

that is "affected by death".

68. Clearly, title to, or interest in real property cannot be "affected by death", when there is no specific date of death, pled in the petition to begin with.

69. The petition is fatally procedurally defective and void on its face.

70. No judicial officer acting on behalf of the Los Angeles Superior Court, should be throwing around the magnitude of an order establishing date, place and time of *death*, as a discovery sanction.

71. Judge May as an officer of the Los Angeles Superior Court, using the serious significance of an order establishing fact of death, as a discovery sanction, directly violates 18 U.S Code §242 which makes it a felony offence for any person acting under color of law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States.

72. Not only has Judge Gus T. May and the Los Angeles Superior Court sought to deprive the most fundamental constitutional right afforded to all persons, equally protected, that being, *life,* without a hearing, without evidence, and in clear violation of the Fourteenth Amendment of the United States Constitution, defendants purported judicial acts and void orders in the clear absence of subject matter jurisdiction, raise to the level of financial crime, as a fraudulent decree of death on or before December 1, 2015, would in turn, operate to potentially void hundreds of millions of dollars of Australian financial transactions conducted by Norma Hannaford after December 1, 2015.

## V.
## CONSPIRACY TO DEFRAUD SUSAN HANNAFORD BY JUDGE GUS T. MAY

73. Judge Gus T. May is actively engaged in a conspiracy to defraud Susan Hannaford and has a vested interest in the outcome of these proceedings.

74. A recent investigation into Judge Gus T. May revealed a disturbing undisclosed conflict of interest as expounded below.

///

75. For over half a decade whilst in private practice, Judge Gus T. May shared
    an office address with *Jeremy Shepherd* and his business partner *Kevin
    Behrendt*, (petitioners counsel in the fact of death proceedings; LASC
    20STPB10135; defendants in the extortion action; LASC Case No.
    19STCV11008) located at 10951 W. Pico Blvd, Los Angeles, CA 90064.

76. For several years, Judge Gus T. May was employed by Hall & Associates
    as an Associate Attorney for Carlyle W. Hall Esq., located at 10951 W. Pico, Los
    Angeles, California, 90064.

77. Hall & Associates was then rebranded as Center for Law in the Public Interest
    located at 10951 W. Pico, Los Angeles, California, 90064 (**Exh. E**).

78. Judge Gus T. May was then employed as the Attorney by the Center for Law in
    the Public Interest located at 10951 W. Pico, Los Angeles, California, 90064.

79. For context, Jeremy Shepherd and business partner Kevin Behrendt, the
    defendants in the extortion action (LASC Case No. 19STCV11008) operate
    the business PearlParadise.com Inc., located at 10951 W. Pico, Los Angeles, CA
    90064, disturbingly the same office address as Judge Gus T. May at both Hall
    & Associates and the Center for Law in the Public Interest.

80. PP Web Pros LLC, a co-conspirator in the extortion action *Hannaford vs.
    Behrendt* (Case No. 19STCV11008) also operates their business out of the same
    address as Judge Gus T. May, located at 10951 W. Pico, Los Angeles, CA 90064
    (*Id.*)

81. Hall & Associates then rebranded as Hall & Henderson, under the supervision
    of attorney Andrew Ryan Henderson Esq, once again at the *same address* of
    10951 W. Pico Blvd, Los Angeles, CA 90064.

82. Andrew Ryan Henderson Esq. is the business partner of Judge Gus T. May and
    acted as co-counsel with Judge May on multiple cases in both state and federal
    court and continued to litigate cases with Andrew Henderson Esq, and Hall &
    Henderson whilst Judge Gus T. May was working with Bet Tzedek Legal
    Services up until being appointed to the bench in 2017.

///

83. To compound this rampant conflict and conspiracy, Andrew Ryan Henderson Esq. (Judge Gus T. Mays business partner and co-counsel at Henderson & Hall) located at 10951 W. Pico, Los Angeles, CA 90064 has since updated his address with the State Bar of California to none other than 13101 W. Washington Blvd, Los Angeles, CA 90066, the exact *same address,* once again, as petitioners counsel, Kevin Behrendt in the fact of death and extortion proceedings.

84. A true and correct copy of Kevin Behrendt's address of 13101 W. Washington Blvd, Los Angeles, CA 90066 from the State Bar of California is attached as **Exh. F.**

85. A true and correct copy of Gus T. May's co-counsel and business partner at Hall and Henderson, Andrew R. Henderson Esq. address of 13101 W. Washington Blvd, Los Angeles, CA 90066; **Exh. G**.

86. 10951 W. Pico Blvd, Los Angeles, CA 90064 and 13101 W. Washington Blvd, Los Angeles, CA 90066 is same addresses for both petitioners counsel, Kevin Behrendt, Jeremy Shepherd *and* Judge Gus. T. Mays place of employment.

87. For context, 10951 W. Pico, Los Angeles, CA 90064, is a very small, intimate, triplex and shared office space in the Pico District of West Los Angeles.

88. For additional context, 13101 W. Washington Blvd, Los Angeles, CA 90066, is similarly a very small, intimate duplex, in the Culver City district.

89. Even more disturbing is that Judge Gus T. Mays business partner Andrew Ryan Henderson Esq., website reflects their specialization is in "…land ownership, development and redevelopment".

90. These facts make it strikingly clear as to why Judge Gus T. May has gone to such *extreme lengths* to fraudulently retrospectively declare Norma Hannaford deceased on or before December 1, 2015, without any evidence of death, ignoring notarized and recorded title deeds and proof of life, in order to fraudulently exert jurisdiction over the iconic Palazzo Beverly Hills, which is owned by Susan Hannaford.

///

91. Mr. Behrendt is so overconfident in his co-conspirator Judge Gus T. Mays corruption of the court to grant his knowingly false and fraudulent fact of death petition, that Mr. Behrendt cancelled the scheduled deposition on the basis that depositions "will not be necessary" as "we *expect* the Court to grant the petition."

92. All of these factors, including the egregious nature of a proposed discovery sanction of fact of *death,* gives Judge Gus T. May the clear appearance of bias and prejudice warranting immediate disqualification.

93. The serious magnitude of the long-standing criminal conspiracy and multi-million-dollar extortion scheme to defraud Susan Hannaford, as between Kevin Behrendt, Jeremy Shepherd, PearlParadise Inc., and PP Web Pros LLC, is expounded upon below.

**VI.**
**STATEMENT OF FACTS**

**Background Facts**

94. Petitioner, Brett Hannaford (LASC Case No. 20STPB10135) is the hostile estranged Australian brother of Susan Hannaford, that has been estranged from Norma Hannaford and the Hannaford family for thirty years.

95. Brett Hannaford is an Australian citizen, resident and domiciled in New South Wales, Australia.

96. Brett Hannaford is represented by Kevin Ryan Behrendt (hereafter "Mr. Behrendt") an attorney that is the subject of *four lawsuits* in active litigation involving Susan Hannaford and family, namely Los Angeles Superior Court Case No. 19STCV11008, Los Angeles Superior Court Case No. 19STCV13245, Los Angeles Superior Court Case No. BC672885, and Los Angeles Superior Court Case No. 20STPB10135.

**The State Bar of California Investigation Against Kevin Behrendt**

97. Mr. Behrendt is also involved in an eight-month investigation by the State Bar of California based on an extensive attorney misconduct complaint filed by Susan Hannaford against Kevin Behrendt.

17

**The Fraudulent Class Action**

98. On August 21, 2017, Kevin Behrendt (hereafter "Mr. Behrendt") on behalf
    of his business partner Jeremy Shepherd filed a putative class action complaint
    against Norma Hannaford (Los Angeles Superior Court Case No. BC672885)
    entitled *Jeremy Shepherd, PearlParadise.com, Inc. vs. Norma Hannaford (nee
    Parry), Susan Hannaford, Marquessa Margolin, et al.*

99. The substance of the fraudulent "class action" lawsuit which comprises of a
    purported "class" of one-individual plaintiff, is on the basis that Norma
    Hannaford is alive and the "mastermind of a complex, widespread fraudulent
    scheme" (FAC ¶3).

100. In particular in *Shepherd vs. Norma Hannaford (nee Parry),* Case No.
     BC672885, filed by Mr. Behrendt on August 21, 2017, Mr. Behrendt alleges
     Norma Hannaford is alive and entered into various agreements:
     - "On April 7, 2016...Plaintiffs entered into the Agreement with
       Norma Hannaford..." (LASC Case No. BC672885; FAC ¶112)
     - "On several occasions between April and August 2016, Shepherd
       spoke with...Norma Hannaford." (LASC Case No. BC672885; FAC ¶84);
     - "Norma Hannaford and Susan Hannaford, along with Hannaford's
       granddaughter, Marquessa Margolin, and Margolin's two minor children,
       engage in a number of illicit acts to further their scheme (LASC Case No.
       BC672885; FAC ¶3
     - Norma Hannaford...is the mastermind of a complex widespread fraudulent
       scheme.." (LASC Case No. BC672885; FAC ¶2)

101. On December 3, 2018, *three years after* the alleged death, Mr. Behrendt filed a
     declaration under penalty of perjury under the laws of the State of California,
     stating that Norma Hannaford is alive stating:
     "...there is ***no question*** that Norma Hannaford received actual notice of the
     proceedings [filed on August 21, 2017]" (Decl. Behrendt; Oct. 3, 2018)

18

102. Mr. Behrendt further alleges that Norma Hannaford spoke with Mr. Behrendt's business partner, Jeremy Shepherd on several occasions between 2016 and 2017, and that Norma Hannaford is a party to the rental agreement dated July 29, 2016.

103. On or about April 2018, Mr. Behrendt held a press conference outside the Los Angeles Superior Court, Spring Street Courthouse to sell a false story to Seven West Media, New Idea Magazine.

104. The substance of the false story was "Famous Actress Susan Hannaford, Australia's Sweetheart, Facing Jailtime for Scamming Businessmen" alongside an enlarged photograph of Susan Hannaford, Mr. Behrendt and his business partner Jeremy Shepherd.

105. Mr. Behrendt was quoted contradictorily stating "Norma Hannaford definitely died in 2009, and then Susan Hannaford put the properties in [Norma Hannaford's] name."

106. Mr. Behrendt also contacted Seven Sunday Night News which is also owned by Seven West Media, a multi-billion-dollar news organization, spreading false, and malicious statements about Susan Hannaford and family, which is the subject of Susan Hannaford's $200 million defamation lawsuit, Los Angeles Superior Court, Case No. 19STCV13245 *Susan Hannaford, Marquessa Margolin vs. Seven West Media, Seven Satellite Australia et al.*

107. Seven West Media entered into a confidential settlement agreement with Susan Hannaford and Marquessa Margolin, removed and retracted the false story and issued an apology, resulting in dismissal of Case No. 19STCV13245.

**The Defamation and Extortion Action**

108. On April 2, 2019, Susan Hannaford, and her daughter Marquessa Margolin along with Susan's two minor children, Emmanuel Margolin Jr., and Contessa M.H, a minor child, filed a defamation, extortion and stalking action against Kevin Behrendt, his business partner, Jeremy Shepherd along with their

companies PP Web Pros LLC, and PearlParadise.com Inc entitled: *Susan Hannaford, Marquessa Margolin, Emmanuel M.H, a minor, Contessa M.H, a minor vs. Kevin Behrendt, Jeremy Shepherd et al* (Los Angeles Superior Court Case No. 19STCV11008).

109. On July 2, 2020, in *Hannaford vs. Behrendt,* Judge John P. Doyle denied Mr. Behrendt's anti-SLAPP motion, on each and every defamation cause of action, including denying anti-SLAPP on the most serious cause of action for defamation *per se,* ordering:

> "**Actual malice requires that the statement at issue be made with knowledge that is was false...**
>
> (*New York Times Co. v. Sullivan* (1964) 376 U.S 254, 280)
>
> "...**actual malice must be shown by clear and convincing evidence...**"

110. Judge John P. Doyle after consideration of hundreds of pages of evidence, including video evidence, and oral argument, ordered that the fraud allegations made by Mr. Behrendt (the entire substance of the purported "class" action lawsuit; LASC Case. No. BC672885; repeated as fact in LASC Case No. 20STPB10135) regarding Susan Hannaford, Norma Hannaford, Marquessa Margolin and the minor children, was knowingly false and malicious Judge John P. Doyle ruling:

> "**Hannaford has provided sufficient evidence of actual malice with regard to Kevin Behrendt's false statements...**
>
> "**Kevin Behrendt's statements suggesting Susan Hannaford commits fraud with respect to the Palazzo Beverly Hills ....were made with *actual knowledge* that they were <u>false</u>.**"

111. Judge John P. Doyle also ordered:

> "There is also evidence that Hannaford's mother
>
> [Norma Hannaford] **did not pass away...**
>
> Hannaford's mother pursued a personal injury lawsuit in 2015."

## The Restraining Order Action

112. On June 30, 2020, Susan Hannaford filed a restraining order against Jeremy Shepherd and business partner Kevin Behrendt for harassment and stalking.

113. The petition for restraining order were ordered related by Judge Susan L. Lopez-Giss to the defamation and extortion action filed by Susan Hannaford against Kevin Behrendt on April 2, 2019, Los Angeles Superior Court, Case No. 19STCV11008, entitled *Susan Hannaford, Marquessa Margolin, Emmanuel M.H, a minor, Contessa, M.H, a minor vs. Kevin Behrendt et al.*

**The Fraudulent Fact of Death Petition**

114. On December 7, 2020, approximately four months after the filing of the restraining order and Mr. Behrendt's humiliating anti-SLAPP defeat and the accompanying scathing 17-page admonishment of Mr. Behrendt by Judge John P. Doyle in denying Mr. Behrendt's anti-SLAPP motion and ruling that Mr. Behrendt made "knowingly false statements" with "actual malice" regarding Susan Hannaford, Norma Hannaford, Marquessa Margolin and family Mr. Behrendt concocted a new scheme to defraud Susan Hannaford.

115. On December 7, 2020, Mr. Behrendt retaliated by filing yet another malicious and meritless action, namely, the Petition to Establish Fact of Death, purportedly on behalf of Susan Hannaford's estranged and hostile Australian brother, Brett Hannaford, resident in New South Wales, Australia, that has been estranged from Norma Hannaford for approximately thirty years.

116. In the same manner as the sham single plaintiff "class" action lawsuit filed by Mr. Behrendt (Case No. BC672885) entirely devoid of any evidence, the sham Petition to Establish Fact of Death (Case No. 20STPB10135) filed by Mr. Behrendt, also entirely devoid of any evidence, attaches no death certificate, no declaration or affidavit of Brett Hannaford and repeats the identical false statements previously ruled upon by Judge John P. Doyle as judicially defamatory, seeking an order falsely declaring Norma Hannaford died on or before December 1, 2015.

117. The fraudulent Petition to Establish Fact of Death is signed by Mr. Behrendt and dated December 7, 2020, yet Mr. Behrendt fraudulently had Brett

Hannaford sign a blank verification form dated November 6, 2020, a month

before the petition was even drafted. Despite bringing the unverified fact of

death petition and glaring fraud to the court's attention, Judge Gus T. May

declined to inquire further on the issue.

## VII.
## PARTIES

118.  Plaintiff, Marquessa Margolin, is the petitioner in Los Angeles Superior Court

Case No. 20STPB10135 and beneficiary of the Last Will and Testament

of Norma Hannaford.

119.  Defendant, the Honorable Gus T. May, is a judge of the Los Angeles County

Superior Court for the State of California.

120.  Defendant, the Los Angeles County Superior Court, is a division of the

State of California.

121.  Defendants are named only in their official capacities. Defendants were

acting and continue to act under color of state law in the deprivation of

Marquessa Margolin's constitutionally protected rights. Both defendants,

Judge Gus T. May, and the Los Angeles Superior Court are hereinafter

collectively referred to as "Judge Gus T. May", "Judge May" or "Defendants".

122.  Defendant, Commission on Judicial Performance is the state governing and

enforcement agency responsible for investigating judicial misconduct

complaints including ordering the censure and removal of judges in the

State of California pursuant to the California Constitution, Article VI,

Sections 8, 18, 18.1 and 18.5.

123.  Defendant, Commission on Judicial Performance is a division of the State

of California.

## VIII.
## STATEMENT OF FACTS

124.  Marquessa Margolin ("Ms. Margolin") is the daughter of famous Australian

actress Susan Hannaford and is the granddaughter of Norma Hannaford.

125.  Ms. Margolin is a human rights advocate and legal scholar.

126. Ms. Margolin holds a Bachelor of Law (LLB) from Central Queensland University, Master of Law (LLM) from Bond University, Queensland.

127. Norma Hannaford is an Australian investor and entrepreneur.

128. Norma Hannaford is an Australian citizen, resident and domiciled in Surfers Paradise, Queensland, Australia.

129. Susan Hannaford is the daughter of Norma Hannaford.

130. Susan Hannaford is a famous award nominated Australian actress and award-winning luxury real estate developer and is the owner of the iconic Palazzo Beverly Hills.

131. Susan Hannaford, and her company Zenith Development Inc., a California Corporation own 13200 Mulholland Drive, Beverly Hills, CA 90210 and 865 Comstock Ave, Unit 6B, Los Angeles, CA 90024, and have done so for approx. twenty-five (25) years, since original purchase by Susan Hannaford, individually, in 1998 and 2003, respectively.

132. Susan Hannaford, a single woman, also solely holds the Note and Deed of Trust with JP Morgan Chase for the past approx. twenty-five (25) years.

133. Susan Hannaford, a single woman, also holds the Declaration of Homestead recorded on July 12, 2009 (Los Angeles County Recorder's Office; Doc. No. 20091047708).

134. Susan Hannaford is the appointed Attorney in Fact under Durable Power of Attorney for Norma Hannaford.

135. Susan Hannaford is the Executrix and Beneficiary of the Last Will and Testament of Norma Hannaford.

## IX.
## JURISDICTION

136. This action is brought pursuant to 42 U.S.C §1983 and Fourteenth Amendment to the United States Constitution. Jurisdiction is proper under 28 U.S.C §1331 and §1343(a)(3).

///

23

137. Pursuant to 42 U.S.C §1983, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory de    e was violated, or declaratory relief was unavailable." In the present matter, declaratory relief is available and that is the only relief requested at this time.

138. In this case, neither judicial immunity, nor any doctrine that flows from it, is applicable, given the complete and total absence of subject matter jurisdiction of the state court to issue a valid interlocutory order or render final judgment.

139. Moreover, the *Rooker-Feldman* doctrine would not apply, as this action is a specific constitutional challenge that Cal. Prob Code §200 was invalidly — and unconstitutionally — applied in the state court action (*Carter v. Burns,* 524 F.3d 796 (6th Cir. 2008) triggering the *Rooker- Feldman* exemption.

140. In *Hood v. Keller* the court summarized the distinction as follows:
    "The *Rooker-Feldman* doctrine "**does not** prohibit federal district courts from exercising jurisdiction where the plaintiffs claim is merely a general challenge to the constitutionality of the state law applied in the state action…"
    (*Hood v. Keller,* 341 F.3d 593,57)

141. Moreover, the probate exception does not apply, as a case does not fall under the probate exception if it merely impacts a state court's performance of [probate] tasks" (*Curtis v. Brunsting,* 704 F.3d 406, 409 (5th Cir. 2013).

142. In *Chevalier v. Estate of Barnhart* (6th Cir. 2015) 803 F3d. 789, 791; the court explained:
    "….the probate exception **does not** divest a federal court of subject matter jurisdiction unless a probate court is already exercising *in rem* jurisdiction over property at the time plaintiff files her complaint in federal court."

143. As there is no *in rem,* or *res* over any property, the probate exception is wholly inapplicable and **does not** divest federal court of subject-matter jurisdiction.

144. It is also black-letter law that, fact of death is a narrow exception that favors collateral attack, in that any erroneous finding of death, constitutes a void

order, a nullity, that has no legal or binding effect, and may be avoided in *any* collateral proceeding. Not only is a collateral attack permissible, it assists the court by aiding the administration of justice.

145. Venue is proper in the United States District Court of the Central District of California pursuant to 28 U.S.C §1391(b).

146. This is an action for declaratory judgment pursuant to 28 U.S.C §2201, for the purpose of determining a question of actual controversy,

## COUNT ONE

(Violation of the Fourteenth Amendment of United States Constitution)

147. Ms. Margolin hereby incorporates paragraphs 1 through 146 above as if fully set forth herein.

148. California Probate Code sections that allow the court to declare or presume a person *deceased,* including any code that allows a person be retrospectively declared or presumed deceased, without evidence, without a hearing, without due process, and without any direct right of appeal is in violation of the Fourteenth Amendment of the United States Constitution, in that the statute unconstitutionally deprives, *life, liberty and property*, without any post-deprivation remedy and without a direct or statutory right of appeal.

149. Cal. Prob Code §200 is unconstitutional in that it:

   (1) vests unlimited discretion in the trial judge to deprive the most fundamental constitutional right, that being, life; liberty and property;

   (2) fails to provide procedural due process safeguards to ensure statutory jurisdictional compliance and is a non-appealable order under Cal. Prob Code §1300-1304;

   (3) fails to provide Ms. Margolin, or any aggrieved person with any procedural safeguards, including but not limited to, a means to have the trial court's decision establishing fact of death reviewed in a timely manner; and

   (4) fails to provide Ms. Margolin, or any aggrieved person, including Norma Hannaford, with any post-deprivation rights;

(5) fails to provide Ms. Margolin, or any aggrieved party, including Norma Hannaford, with a direct right of appeal to annul, void or otherwise vacate an erroneous and/or void order of fact of death.

### COUNT TWO
(Due Process Violation of the Fourteenth Amendment)

150. Ms. Margolin hereby incorporates paragraphs 1 through 149 above, as if fully set forth herein.

151. Judge Gus T. May prejudicial acts in ignoring the 17-page order of Judge John P. Doyle dated June 2, 2020, ruling that Norma Hannaford did not pass away and that the judicially defamatory allegations regarding Susan Hannaford, Norma Hannaford and Marquessa Margolin, repeated verbatim in the fact of death petition were "knowingly false" and made with "actual malice", ignoring the Declaration of W. Michael Hartman Esq., an attorney with over forty years in good standing with the State Bar of California attesting to life, ignoring the Declaration of Julie Jay Weiss, attesting to life, ignoring the Declaration of Marquessa Margolin, Susan Hannaford, Emmanuel Margolin Jr., attesting to life, and egregiously ignoring indisputable notarized and recorded documents, signed by Norma Hannaford and acknowledged by a Notary Public, years after the fraudulent fact of death, proving life and entirely disproving the petition was a violation of due process.

152. Judge Gus T. Mays fraudulent intended order of fact of death, was and is intended to deprive Ms. Margolin from her property rights as a beneficiary of the Last Will and Testament of Norma Hannaford and sought to fraudulently invalidate hundreds of millions of dollars of Australian financial contracts executed by Norma Hannaford on or after December 1, 2015, in violation the Fourteenth Amendment to the United States Constitution not to be deprived of life, liberty and property, without due process of law.

## COUNT THREE

(Declaratory Judgment – No Death)

153. Ms. Margolin hereby incorporates paragraphs 1 through 152 above, as if
fully set forth herein.

154. Ms. Margolin is entitled to declaratory judgment from this court, declaring
Norma Hannaford **did not** die on or before December 1, 2015.

155. The Declaratory Judgment Act gives district court discretion to issue
declaratory relief. 28 U.S.C 2201; *see Wilton v. Seven Falls Company,*
515 U.S 277, 288-90 (1995); *see also Government Employees Insurance
Company v. Dizol,* 133 F.3d 1220 1223 (9th Cir. 1998).

156. The purpose of the Declaratory Judgment Act is to "relieve potential
defendants from the threat of impending litigation." *Spokane Indian Tribe v.
United States,* 972 F2d 1090, 1091-92 (9th Cir. 1992) (quoting *Hal Roach
Studios, Inc. v. Richard Feiner and Co.,* 896 F.2d 1542, 1555 (9th Cir. 1990).

157. As the indisputable notarized and recorded Grant Deeds evidence Norma
Hannaford **did not** die on or before December 1, 2015, and Ms. Margolin
seeks a declaration from this court, ending this controversy accordingly.

158. This question of fact, does not interfere with the state court action, as the
state court lacks subject matter jurisdiction to adjudicate the controversy.

159. This court has jurisdiction to enter declaratory judgment as (1) at the time
of filing this action, the state court has not decided the issue of life or death,
nor have the parties been heard on the issue, therefore issue preclusion is
inapplicable (2) any fraudulent order of death anytime "on or before December
1, 2015", as a discovery sanction, is so overbroad, vague and ambiguous, that
issue preclusion cannot apply. (*Mayes v. City of Hammond* (N.D.Ind. 2008) 631
F.Supp.2d 1082, 1083) and (30 the state court lacks subject matter to
adjudicate the controversy.

160. The declaratory judgment sought herein, constitutes "exceptional
circumstances" given its clear ties, as a false and fraudulent order of death,
with no direct appellate remedy, is in violation of the Fourteenth Amendment

of the United States Constitution depriving the fundamental right to *life*, liberty and property and in such exceptional circumstances, this court should exercise its jurisdiction to declare Norma Hannaford did not "die on or before December 1, 2015".

## COUNT FOUR
(Declaratory Judgment)

161. Ms. Margolin hereby incorporates paragraphs 1 through 160 as above, as if fully set forth herein.

162. As expounded above, the burden of proof in a fact of death petition, is on the party asserting fact of death.

163. Similarly, once subject matter jurisdiction is challenged (no death, no residency in California; no real property in California) the burden of proof was on the party asserting jurisdiction to provide clear *evidence* of death, and *evidence* of ownership of real property in the State of California at the time of alleged death (Cal. Prob Code §200).

164. The Los Angeles Superior Court and Judge Gus T. May were required to presume lack of jurisdiction until competent evidence was established in opposition to the Motion to Dismiss.

165. Judge Gus T. May reversed the burden of proof requiring Norma Hannaford prove she did not die on or before December 1, 2015.

166. Judge Gus T. May reversed the burden of proof requiring Norma Hannaford prove lack of subject matter jurisdiction.

167. Notwithstanding the Motion for Summary Judgment for lack of subject matter jurisdiction filed on September 21, 2022, and prior to hearing the Motion to Dismiss, Judge Gus T. May threatened to declare Norma Hannaford retrospectively deceased on or before December 1, 2015, without a hearing, without any evidence, and as a discovery sanction.

///

168. Ms. Margolin is entitled to declaratory judgment, as an interested party, and beneficiary of the Last Will and Testament of Norma Hannaford, that Judge Gus T. May;

    (1) reversed the burden of proof requiring Norma Hannaford prove she did not die on or before December 1, 2015; and

    (2) reversed the burden of proof requiring Norma Hannaford prove lack of subject matter jurisdiction

was a clear violation of the Fourteenth Amendment due process and equal protection clauses of the United States Constitution.

169. Judge Gus T. May, using a fraudulent retrospective order establishing fact of death on or before December 1, 2015, with no evidence of death, as a discovery sanction, constitutes violations of Ms. Margolin's rights pursuant to the Fourteenth Amendment of the United States Constitution, not to be deprived of life, liberty or property, without due process of law and to enjoy equal protection of the laws.

## COUNT FIVE

(Declaratory Judgment)

170. Ms. Margolin hereby incorporates paragraphs 1 through 169 as above, as if fully set forth herein.

171. Ms. Margolin requests this court issue a declaratory judgment that there is no evidence of fact of death.

172. This is a justiciable controversy within this courts jurisdiction, as Ms. Margolin's rights under numerous contracts entered into with Norma Hannaford, after December 1, 2015, are at stake, in this case.

173. Ms. Margolin is entitled to a common sense – declaratory judgment, that there is no evidence of fact of death, including no evidence of fact of death that Norma Hannaford died on or before December 1, 2015.

///

## COUNT SIX

(Declaratory Judgment)

174. Ms. Margolin hereby incorporates paragraphs 1 through 173 as above, as if fully set forth herein.

175. Pursuant to the 14th Amendment all parties are entitled to have a neutral and detached decision maker preside over their litigation. Any reasonable person, would conclude that Judge Gus T. Mays actions in threatening to enter a retrospective order establishing fact of death, as a discovery sanction, without any evidence of death, willfully ignoring notarized proof of life, constitutes the most serious, unjudicial willful and prejudicial misconduct, committed in bad faith with blatant disregard for due process and fundamental rights under the United States Constitution, establishes that Judge Gus T. May is not neutral and detached regarding this issue.

176. On June 21, 2022, court appointed Guardian Ad Litem and Attorney, Wendy Hartmann Esq., on behalf of Emmanuel Margolin Jr., a minor child, preserving his rights beneficiary of the Last Will and Testament of Norma Hannaford.

177. On June 21, 2022, the peremptory disqualification (CCP 170.6) of Judge Bogdanoff was granted and the matter was reassigned to Judge Gus T. May.

178. Cal. Civil Code §170.6 provides procedural safeguards that once a judicial officer is disqualified they cannot speak with other judicial officers regarding the case to avoid an appearance of bias, or disqualification retaliation.

179. In this case, no procedural safeguards were followed and Judge Bogdanoff and Judge May continued to improperly discuss this case, even retaining the same research attorney, Darciann Gilroy Horton Esq., to draft probate notes and provide the court with interim orders, the previous research attorney for the disqualified Judge Bogdanoff in violation of Judicial Canon 3(b)(7)(a).

180. Moreover, as the above facts demonstrate, disturbingly Judge Gus T. May for over half a decade prior to appointment to the Los Angeles Superior Court, whilst in private practice and employed by Hall & Associates and the Center

for Law In the Public Interest, shared offices with Jeremy Shepherd and his business partner Kevin Behrendt, *petitioners counsel* the state court action.

181. Judge Gus T. May did not disclose this conflict of interest.

182. These facts in combination with the unconstitutional, December 5, 2022 order seeking to use an order establishing retrospective fact of death, as a discovery sanction, demonstrates a clear appearance of bias warranting Judge Gus T. Mays immediate disqualification from these proceedings.

183. California statutes allowing a prejudicial judge, to be the judge, jury and executioner to decide his own disqualification or strike any disqualification from the record, is an egregious violation of the 14th amendment of the United States Constitution.

184. Ms. Margolin is entitled to a declaratory judgment that California Civil Code §170.4(b) is unconstitutional and violates due process.

## COUNT SEVEN

### (Declaratory Judgment)

185. Ms. Margolin hereby incorporates paragraphs 1 through 184 as above, as if fully set forth herein.

186. The Commission on Judicial Performance is a regulatory enforcement body of the State of California tasked with oversight, discipline, censure and removal of judges from office for violations of the California Constitution, United States Constitution, and California Code of Judicial Ethics.

187. The Commission on Judicial Performance may censure or remove a Superior Court judge or former judge for willful misconduct or prejudicial misconduct pursuant to Cal. Constitution, Article VI §18 subd. (d)). In addition the commission may publicly admonish a judge, or conduct a public hearing as to the matters involving the judge.

188. According to the California State Auditor, the Commission on Judicial Performance, disclosed that less than 2% of all complaints filed by California litigants have resulted in the discipline of state court judges, over a twenty-year period. That is a strikingly disturbing statistic and undoubtedly

plays a key role in explaining why California has the highest rate of judicial misconduct in the country.

189. In April, 2019, Alaine M. Howle, the Auditor of the State of California, issued a 91-page report entitled "Commission on Judicial Performance, Weakness in Its Oversight Have Created Opportunities for Judicial Misconduct to Persist."

190. The substance of California State Auditors report was that the Commission on Judicial Performance (1) does not consistently take all reasonable steps when it investigates alleged misconduct (2) the structure and disciplinary practices do not align with best practices and (3) the Commission on Judicial Performance has not worked sufficiently to increase transparency and Accessibility.

191. As a result of the Commission on Judicial Performances' complete and total lack of oversight, has resulted in pervasive prejudicial judicial misconduct, such as complained of herein, seeking to order an individual retrospectively deceased as a discovery sanction, can occur with impunity, without Judge Gus T. May having no concern of any reprimand, discipline, censure, oversight or removal from the bench.

192. It is the pervasive lack of oversight by the Commission on Judicial Performance that has led to Los Angeles Superior Court having the highest rate of judicial misconduct *in the country*, with Congress taking decisive action to enact the "Judicial Ethics and Anti-Corruption Act of 2022".

193. No-one is above the law, including Judge Gus T. May.

194. Prejudicial misconduct "may be committed by a judge either while acting in a judicial capacity or in other than a judicial capacity." (*Adams v. Commission on Judicial Performance* (1995) 10 Cal.4th 866, 878 [42 Cal.Rptr. 2d 606, 897 P.2d 544]).

195. The California Constitution states that the commission may remove a judge for prejudicial misconduct (Cal. Const., art. VI, § 18, subd. (d)(2); see, e.g., *McCullough v. Commission on Judicial Performance* (1989) 49 Cal.3d 186, 191 [260 Cal. Rptr. 557, 776 P.2d 259] [prejudicial conduct may "by itself,

justify removal"]; *Inquiry Concerning Saucedo, supra*, 62 Cal.4th at p. CJP Supp. 46 ["judge may be removed for prejudicial misconduct"]; *Inquiry Concerning Van Voorhis, supra*, 48 Cal.4th at p. CJP Supp. 314 [judge can be removed for "'conduct prejudicial to the administration of justice that brings the judicial office into disrepute'"].) A judge can even be removed for only one act of prejudicial misconduct.

196. A judge's failure to appreciate or admit to the impropriety of his or her acts indicates a lack of capacity to reform." (*Inquiry Concerning Platt* (2002) 48 Cal.4th CJP Supp. 227, 248.) "Implicit in the lack of reform is the risk of yet further violations in the future." (*Inquiry Concerning Ross, supra*, 49 Cal.4th at p. CJP Supp. 143.) "It is very difficult for a judge to avoid repeating an ethical violation unless he recognizes the act as misconduct." (*Inquiry Concerning Van Voorhis, supra*, 48 Cal.4th at p. CJP Supp. 308.)

197. Whilst judges facing censure, discipline or removal proceedings from the bench have a wide range of review remedies including before the Supreme Court of California, such procedural due process safeguards do not apply to complainants that file complaints *against* judges for judicial misconduct in the County of Los Angeles. Simply put, a judge has an automatic statutory right to have the commissions decision reviewed by the Supreme Court, whereas a complaint *about a judge*, that is not investigated or prosecuted, it not a reviewable decision, nor is there an automatic right under statute to appeal any decision of the Commission on Judicial Performance.

198. As such, the Cal. Code Jud. Ethics is unconstitutional and in violation of the Fourteenth Amendment of the United States Constitution due process and equal protection clauses.

199. Judicial officers must not be afforded "special treatment" under the law.

200. Judge Mays prejudicial misconduct violates Cal. Code Jud. Ethics, canons 2A, 3B(7), by threatening a litigant with a declaration of death as a discovery sanction, denying due process. Judge May engaged in further prejudicial misconduct and violated Cal. Code Jud. Ethics, canons 2, 3B(4), by improperly

threatening a declaration of death as a discovery sanction. Judge May engaged
in willful misconduct and violated Cal. Code Jud. Ethics, canons 2, 3E(2), by
failing to disclose the appearance of bias sharing an office address with
petitioners counsel, hearing petitioners counsels ex parte motion to continue to
the motion to dismiss, despite the proof of service reflecting Ms. Margolin was
never served, repeatedly obstructing and attempting to dissuade counsel from
representing the objector Norma Hannaford, by repeatedly requesting
duplicative, repetitive Substitution of Attorney forms be filed and re-filed with
the court, and failing to disqualify himself under Code Civ. Proc., §170.1, subd.
(a)(6)(a)(iii), and Cal. Code Jud. Ethics, canon 3E(1) for appearance of
partiality. (*Inquiry Concerning McBien,* 49 Cal.4th CJP Supp. 315, 316).

201. The California Judicial Code of Ethics, is in its most fundamental sense,
is a contract between the Commission on Judicial Performance and the
public at large.

202. Ms. Margolin seeks declaratory judgment from this court, that a retrospective
order establishing fact of death on or before December 1, 2015, as a discovery
sanction, with no evidence of death, whilst ignoring notarized proof of life,
constitutes violation(s) of the California Judicial Canon as follows:

(1) violation of Judicial Canon 3B(5) (prejudice)

(2) violation of Judicial Canon 3B(7) (*ex parte* communications)

(3) violation of Judicial Canon 3B(7)(a) (discussing case with previously
disqualified judge)

(4) violation of Judicial Canon 3B(9) (prejudging issues
without consideration of facts, discovery sanction of false
death, substantially interfered with a fair trial or hearing)

(5) violation of Judicial Canon 3C(1) (partiality, bias, prejudice)

(6) violation of Judicial Canon 3E(B)(1) (disqualification)

(7) violation of Judicial Canon 3B(8) (violation of due process)

203. That the violations of the Judicial Canons contained hereinabove constitute a
violation of the Fourteenth Amendment of the United States Constitution due

34

process and equal protection clauses.

## **COUNT EIGHT**

(Declaratory Judgment)

204. Ms. Margolin hereby incorporates paragraphs 1 through 203 as above, as if fully set forth herein.

205. Ms. Margolin seeks a declaratory judgment that the Judicial Code of Ethics are unconstitutional and in violation of the Fourteenth Amendment due process and equal protection clauses, as judicial officers are entitled to an automatic statutory review by the Supreme Court of California whereas individual complainants have no statutory appellate, or judicial review remedy to review a decision by the CJP.

206. Thus, judicial officers are given impermissible "special treatment" under law in violation of constitutional equal protection under law.

**WHEREFORE**, Plaintiff, Marquessa Margolin respectfully requests this Court to:

I. Issue a declaratory judgment that California Probate Code §200, violates the Fourteenth Amendment of the United States Constitution and is therefore void;

II. Issue a declaratory judgment finding that Los Angeles Superior Court and Judge Gus T. May has violated and continues to violate Ms. Margolin's rights pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C §1983.

III. Issue a declaratory judgment that Norma Hannaford did not die on or before December 1, 2015;

IV. Issue a declaratory judgment that Judge Gus T. Mays use of an order establishing fact of death, with no evidence of death, as a discovery sanction, reverses the burden of proof, and is in violation of the Fourteenth Amendment of the United States Constitution due process and equal protection clauses.

V.   Issue a declaratory judgment that there is no evidence of death of Norma Hannaford on or before December 1, 2015;

VI.   Issue a declaratory judgment that Cal. Civil Code §170.4 is unconstitutional;

VII.  Issue a declaratory judgment that Judge Gus T. Mays use of an order establishing fact of death, with no evidence of death, as a discovery sanction, is in violation of Judicial Canon 3(B)(5), 3B(7), 3B(7)(a), 3B(9) 3C(1), 3EB(1), and 3B(8).

VIII. Issue a declaratory judgment that California Code of Judicial Ethics violates the due process and equal protection clauses of the United States Constitution.

Award Ms. Margolin any further relief that the court feels just and appropriate under the circumstances.

Dated: February 2, 2023

Respectfully submitted:

_____

By: Marquessa Margolin LL.B, LL.M

36

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For Legal Professionals > (https://lp.findlaw.com/)

**FindLaw** (https://www.findlaw.com/)

Find a Lawyer (https://lawyers.findlaw.com/)

Legal Forms & Services ⌄

Learn About the Law ⌄

Laws and Court Decisions (https://caselaw.findlaw.com/)

Blogs(https://

Search for legal issues
Search for legal issues

Housing & Construction Defects

For help near (city, ZIP code or county)
For help near (city, ZIP code or county)

Los Angeles, CA

🔍

FINDLAW (//WWW.FINDLAW.COM) / LAWYER DIRECTORY (/) / CALIFORNIA (/LAWYER/STATE/CALIFORNIA) / LOS ANGELES (/LAWYER/STATEPRACTICE/CALIFORNIA/LOS-ANGELES) / CENTER FOR LAW IN THE PUBLIC INTEREST (/PROFILE/VIEW/2423654_1) / GUS T MAY



### Gus T May - Los Angeles, CA

3rd Floor
10951 W Pico Blvd
Los Angeles, CA 90064
**Center For Law In The Public Interest**
(/profile/view/2423654_1)

Updated: 11/13/2001

✎ Write A Review

📞 (310) 474-1933
(tel:+1-310-474-1933)

Your Profile? Update Now
(http://profileupdate.findlaw.com/pu/login/login.html)

## Los Angeles Civil Rights Lawyer

When viewing a listing, consider the state advertising restrictions (/profile/html/state_restriction.html) to which lawyers and law firms must adhere, as well as our FindLaw.com Legal Directory disclaimer (//www.findlaw.com/company/disclaimer.html). Some lawyers publish comparative information regarding the services that they provide which may be subject to specific comparative communications restrictions (/profile/html/state_restriction.html#recom).

### Reviews ⓘ

**0** reviews

✎ Write A Review

### Map Location

(https://www.google.com/maps?
q=Center+For+Law+In+The+Public+Int

### How Do I Choose A Lawyer?

Consider the following:

**Comfort Level** - Are you comfortable telling the lawyer personal information? Does the lawyer seem interested in solving your problem?
**Credentials** - How long has the lawyer been in practice? Has the lawyer worked on other cases similar to yours?
**Cost** - How are the lawyer's fees structured - hourly or flat fee? Can the lawyer estimate the cost of your case?
**City** - Is the lawyer's office conveniently located?

### Not Sure What Questions To Ask A Lawyer?

Here are a few to get you started:

- How long have you been in practice?
- How many cases like mine have you handled?
- How often do you settle cases out of court?
- What are your fees and costs?
- What are the next steps?

### Want To Check Lawyer Discipline?

It is always a good idea to research your lawyer prior to hiring. Every state has a disciplinary organization that monitors attorneys, their licenses, and consumer complaints. By researching lawyer discipline (https://www.findlaw.com/hirealawyer/choosin the-right-lawyer/researching-attorney-discipline.html) you can:

- Ensure the attorney is currently licensed to practice in your state
- Gain an understanding of his or her historical disciplinary record, if any.
- Determine the seriousness of complaints/issues which could range from late bar fees to more serious issues requiring disciplinary action.

## Career History

| Role | Employer | Where |
|---|---|---|
| Clerk | Hon. Lawrence K. Karlton, U.S. District Court for the Eastern District of California | None |
| Associate | Hall and Associates | None |
| Litigation Director | Center for Law in the Public Interest | Los Angeles County, California |
| Clerk | Hon. A. Howard Matz, U.S. District Court for the Central District of California | Los Angeles County, California |
| Legal director | Public Interest Investigations, Inc. | Los Angeles County, California |
| Directing attorney | Bet Tzedek Legal Services | Los Angeles County, California |
| V.P. of Legal Services | Bet Tzedek Legal Services | Los Angeles County, California |
| Judge | Superior Court of California | Los Angeles County, California |

# Carlyle W Hall Jr
# Lives in Los Angeles, California

People / H / Hall / Carlyle Hall / CA / Los Angeles

## Carlyle W Hall Jr Age 79 (Feb 1943)



### Also Known As

Carlyle Washington Hall, Carlyle J Hall, Cary W Hall, Carlanne H Hall



### Current Address

10951 W Pico Blvd #3
Los Angeles, CA 90064
Los Angeles County
(Dec 1993 - Feb 2023)

## Pearl Paradise

4.3 ★★★★★ (8)

Jeweler in Los Angeles,
California · Open



OVERVIEW    UPDATES    REVIEWS    PHOTOS

📞 CALL    ◈ DIRECTIO...    ◁ SHARE    🌐 WEBSITE

Jewelry showroom spotlighting necklaces,
earrings, bracelets & rings made with a      ›
variety of pearls.



📍 10951 W Pico Blvd, Los
Angeles, CA 90064

🕐 Open · Closes 4:30 PM  ⌄
Updated by phone call 2 weeks ago

🔒 Q pearl paradise

🖼 Image⌐    ⊘ Shopping    🔳 ⸱ᴇws    ▶ Vⁱᶜ

OC    OpenCorporates    ⋮
https://opencorporates.com › us_ca

# PP WEB PROS LLC :: California (US)

Free and open company data on California (US) company PP WEB PROS LLC (company number 201134410239), 10951 W PICO BLV…

MA    start.cortera.com    ⋮
https://start.cortera.com › research

# PP WEB PROS LLC Los Angeles CA, 90064 – Company Profile

Free Business profile for PP WEB PROS LLC at 10951 W Pico Blvd, Los Angeles, CA, 90064-2184, US. PP WEB PROS LLC specializes in:…

 The State Bar *of California*

**Andrew Ryan Henderson #151365**

License Status: Active

Address: The Henderson Law Firm, 13101 W Washington Blvd, Ste 106, Los Angeles, CA 90066-5176
Phone: 310-461-0861  |  Fax: 310-461-0800
Email: andrew@hendersonlawsc.com  |  Website: www.hendersonlawsc.com

More about This Attorney  ▼

**All changes of license status due to nondisciplinary administrative matters and disciplinary actions.**

| Date | License Status ℹ | Discipline ℹ | Administrative Action ℹ |
|------|------------------|--------------|-------------------------|
| Present | Active | | |
| 12/4/1990 | Admitted to the State Bar of California | | |

**Additional Information:**

- About the disciplinary system

Copyright © 2023 The State Bar of California

  

 The State Bar *of California*

**Kevin Ryan Behrendt #211879**
License Status: Active

Address: Dermer Behrendt, 13101 W Washington Blvd, Ste 407, Los Angeles, CA 90066
Phone: 310-614-2492  |  Fax: 310-954-9206
Email: Kevin@DermerBehrendt.com  |  Website: Not Available

More about This Attorney  ▾

**All changes of license status due to nondisciplinary administrative matters and disciplinary actions.**

| Date | License Status ⓘ | Discipline ⓘ | Administrative Action ⓘ |
|------|------------------|--------------|--------------------------|
| Present | Active | | |
| 12/6/2000 | Admitted to the State Bar of California | | |

**Additional Information:**
- About the disciplinary system

Copyright © 2023 The State Bar of California

  

threatening a declaration of death as a discovery sanction. Judge May engaged in willful misconduct and violated Cal. Code Jud. Ethics, canons 2, 3E(2), by failing to disclose the appearance of bias sharing an office address with petitioners counsel, hearing petitioners counsels ex parte motion to continue to the motion to dismiss, despite the proof of service reflecting Ms. Margolin was never served, repeatedly obstructing and attempting to dissuade counsel from representing the objector Norma Hannaford, by repeatedly requesting duplicative, repetitive Substitution of Attorney forms be filed and re-filed with the court, and failing to disqualify himself under Code Civ. Proc., §170.1, subd. (a)(6)(a)(iii), and Cal. Code Jud. Ethics, canon 3E(1) for appearance of partiality. (*Inquiry Concerning McBien,* 49 Cal.4th CJP Supp. 315, 316).

201. The California Judicial Code of Ethics, is in its most fundamental sense, is a contract between the Commission on Judicial Performance and the public at large.

202. Ms. Margolin seeks declaratory judgment from this court, that a retrospective order establishing fact of death on or before December 1, 2015, as a discovery sanction, with no evidence of death, whilst ignoring notarized proof of life, constitutes violation(s) of the California Judicial Canon as follows:

(1) violation of Judicial Canon 3B(5) (prejudice)

(2) violation of Judicial Canon 3B(7) (*ex parte* communications)

(3) violation of Judicial Canon 3B(7)(a) (discussing case with previously disqualified judge)

(4) violation of Judicial Canon 3B(9) (prejudging issues without consideration of facts, discovery sanction of false death, substantially interfered with a fair trial or hearing)

(5) violation of Judicial Canon 3C(1) (partiality, bias, prejudice)

(6) violation of Judicial Canon 3E(B)(1) (disqualification)

(7) violation of Judicial Canon 3B(8) (violation of due process)

203. That the violations of the Judicial Canons contained hereinabove constitute a violation of the Fourteenth Amendment of the United States Constitution due

process and equal protection clauses.

## COUNT EIGHT

### (Declaratory Judgment)

204. Ms. Margolin hereby incorporates paragraphs 1 through 203 as above, as if fully set forth herein.

205. Ms. Margolin seeks a declaratory judgment that the Judicial Code of Ethics are unconstitutional and in violation of the Fourteenth Amendment due process and equal protection clauses, as judicial officers are entitled to an automatic statutory review by the Supreme Court of California whereas individual complainants have no statutory appellate, or judicial review remedy to review a decision by the CJP.

206. Thus, judicial officers are given impermissible "special treatment" under law in violation of constitutional equal protection under law.

**WHEREFORE**, Plaintiff, Marquessa Margolin respectfully requests this Court to:

I. Issue a declaratory judgment that California Probate Code §200, violates the Fourteenth Amendment of the United States Constitution and is therefore void;

II. Issue a declaratory judgment finding that Los Angeles Superior Court and Judge Gus T. May has violated and continues to violate Ms. Margolin's rights pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C §1983.

III. Issue a declaratory judgment that Norma Hannaford did not die on or before December 1, 2015;

IV. Issue a declaratory judgment that Judge Gus T. Mays use of an order establishing fact of death, with no evidence of death, as a discovery sanction, reverses the burden of proof, and is in violation of the Fourteenth Amendment of the United States Constitution due process and equal protection clauses.

V.   Issue a declaratory judgment that there is no evidence of death
     of Norma Hannaford on or before December 1, 2015;

VI.  Issue a declaratory judgment that Cal. Civil Code §170.4 is unconstitutional;

VII. Issue a declaratory judgment that Judge Gus T. Mays use of an order
     establishing fact of death, with no evidence of death, as a discovery
     sanction, is in violation of Judicial Canon 3(B)(5), 3B(7), 3B(7)(a), 3B(9)
     3C(1), 3EB(1), and 3B(8).

VIII. Issue a declaratory judgment that California Code of Judicial Ethics
     violates the due process and equal protection clauses of the United States
     Constitution.

Award Ms. Margolin any further relief that the court feels just and
appropriate under the circumstances.

Dated: February 2, 2023

Respectfully submitted:


By: Marquessa Margolin LL.B, LL.M

36

# EXHIBIT A



3 September 2021

Brett Hannaford
Bellingen Farm Stay
417 Martells Road
Bellingen, NSW 2454

**Contact**
Ian Kennedy
ikennedy@mclaughlins.com.au

**Our Reference**
IK:ik:05166

**Your Reference**

Dear Sir

**BRETT HANNAFORD - CEASE AND DESIST**

We act for Norma Hannaford nee Parry.

We are instructed that you have been repeatedly contacting and harassing our client in relation to matters which she has no necessity nor desire to communicate with you.

We are instructed this includes baseless threats of legal action against our client in the USA and demands for information regarding our client's personal financial circumstances.

You have no entitlement to require our client to provide you with any of her personal information including, but not limited to, financial information.

We have been informed that you have been estranged from our client and her family including Susan Hannaford, Marquessa Hannaford Margolin and our client's grandchildren, for approximately thirty years.

While our client has no obligation to explain her circumstances to you, please take note that we are instructed:

1. our client is an Australian citizen and Australian resident, and does not own any real estate or hold any personal property in the United States; and

2. the commercial building located at 67-69 Mount Street, North Sydney was sold by our client on January 25, 2013.

Our client has no obligation or intention to provide you with any further of her personal information and you are requested to cease and desist contacting and harassing our client and her family.

---

**IMPORTANT NOTICE- CYBER RISK on transfer or deposit of money**
Payments to legal firms are being targeted by cyber-criminals. Before you pay money by EFT or otherwise deposit money to our account, you should call our office on 5591 5099 to confirm bank details verbally.

If our account details ever change, we will advise you by a secure two-step process. We will never just send an email, SMS or telephone you to advise you of a change of bank account. We will never ask you to call a number, other than 5591 5099 to verify bank account details. Should you receive an email, SMS, telephone call or other communication advising a change of bank account for EFT payment, please disregard it and contact us immediately at 5591 5099.

Level 1B
9 Ouyan Street
Bundall Qld 4217

McLaughlins Lawyers Pty Ltd
ABN 44 079 145 010
www.mclaughlins.com.au

PO Box 8870
GCMC Bundall QLD 9726
Tel: +61 (07) 5591 5099
Fax: +61 (07) 5591 5918

*Liability limited by a scheme approved under Professional Standards Legislation*

hann0001_05478_003.docx

Please note that some instances of repeated harassment and intimidation can amount to a basis for an Apprehended Personal Violence Order being obtained in the court in NSW.

Our client reserves her rights generally at law and by providing some information herein does not waive her rights to privacy.

Yours faithfully
**McLAUGHLINS**

**IAN KENNEDY**
**Legal Practice Director**

# EXHIBIT B

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 58

| | |
|---|---|
| **19STCV11008** | July 2, 2020 |
| **SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et al.** | 8:30 AM |

| | |
|---|---|
| Judge: Honorable John P. Doyle | CSR: None |
| Judicial Assistant: M.F. Lopez | ERM: None |
| Courtroom Assistant: R.E. Lee | Deputy Sheriff: None |

APPEARANCES:

For Plaintiff(s): Susan Hannaford (Telephonic); Marquessa Margolin (Telephonic)

For Defendant(s): Michael Ahmadshahi (Telephonic); Jeff Dermer (Telephonic) appearing for

Kevin Ryan Behrendt

Other Appearance Notes: Counsel for Party-In-Interest: Michael Hartman (Telephonic)

**NATURE OF PROCEEDINGS:** Conference Re: Motion Hearing Setting; Hearing on Defendants Kevin Behrendt, Jeremy Shepherd, and Hisano Shepherd's Special Motion to Strike Under CCP Section 425.16 (Anti-SLAPP motion); Status Conference (All-Purpose)

The matter is called for hearing.

Hearing on Motion to Strike is held.

The Court gives the following tentative ruling:

The Anti-SLAPP Motion is granted in part.

On October 30, 2019, Plaintiffs Susan Hannaford, Marquessa Margolin, Bella M.H., a minor, and Emmanuel M.H., Jr., a minor, filed the operative First Amended Complaint ("FAC") for (1) child endangerment, (2) libel per se, (3) slander per se, (4) libel per quod, (5) slander per quod, (6) false light, (7) statutory violation of right of publicity, (8) common law violation of right of publicity, (9) stalking, (10) aggravated stalking, (11) civil extortion, (12) attempted extortion, and (13) conspiracy.

The allegations of the FAC are as follows. Plaintiff Susan Hannaford is "an award-winning renowned luxury real estate developer and award nominated actress best known for playing Kitty Sullivan in the long-running television drama 'The Sullivans' which was viewed in over 70 countries worldwide and featured actors such as Sam Neill, Kylie Minogue and Mel Gibson." (FAC ¶ 12.) Hannaford's daughter, Plaintiff Marquessa Margolin, is "a luxury real estate

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                          July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**                    8:30 AM
**al.**

Judge: Honorable John P. Doyle            CSR: None
Judicial Assistant: M.F. Lopez            ERM: None
Courtroom Assistant: R.E. Lee             Deputy Sheriff: None

developer, luxury event producer, entrepreneur and founder of the luxury diamond jewelry
brand, Marquessa Fine Diamonds™. . . . In addition, Ms. Margolin is an accomplished law
academic scholar, having graduated in the Bachelor of Laws (LL.B) with Distinction from
Central Queensland University and having provisionally completed the Master of Laws (LL.M)
degree from the prestigious Bond University and is currently completing her PhD (Law) in the
field of defamation law. " (FAC ¶¶ 18-19.) Plaintiffs Bella M.H. and Emmanuel M.H., Jr. are
Hannaford's grandchildren.

Defendants Jeremy Shepherd and Hisano Shepherd rented the Palazzo Beverly Hills ("Palazzo")
via Airbnb for a commercial event. The Palazzo is suggested to be a "family home" for
Plaintiffs. (FAC ¶ 66.) Because of damage to a piano at the Palazzo, the Shepherds' $10,000
security deposit was not returned. (See FAC ¶ 22.) The Shepherds and their attorney, Defendant
Kevin Behrendt, then engaged in an extortion scheme to obtain their security deposit. A
component of the scheme was the threat of defamation followed by actual statements suggesting,
among other things, that Plaintiffs are scammers with respect to the Palazzo and that Hannaford
and/or Margolin are or were subject to various criminal proceedings. (FAC ¶ 65.) Such
statements were circulated for months to millions of readers in various online platforms,
websites, media outlets, and tabloid magazines. (See, e.g., FAC ¶¶ 4, 60-61, 90, 116.)
Defendants also hired "thugs" and paparazzi to threaten, intimate, stalk, and harass Plaintiffs.
Additionally, Defendants threatened to file and did in fact file a class action lawsuit against
Plaintiffs Hannaford and Margolin relating to the Palazzo. (FAC ¶¶ 244, 255.)

Anti-SLAPP Motion
Defendants bring an Anti-SLAPP Motion seeking to strike the entirety of the FAC.

(a) Legal Standard
Code of Civil Procedure section 425.16 sets forth the procedure governing anti-SLAPP motions.
In pertinent part, the statute states, "A cause of action against a person arising from any act of
that person in furtherance of the person's right of petition or free speech under the United States
Constitution or the California Constitution in connection with a public issue shall be subject to a
special motion to strike, unless the court determines that the plaintiff has established that there is
a probability that the plaintiff will prevail on the claim." (Code Civ. Proc. § 425.16(b)(1).) The
purpose of the statute is to identify and dispose of lawsuits brought to chill the valid exercise of a
litigant's constitutional right of petition or free speech. (Code Civ. Proc. § 425.16(a); Sylmar Air
Conditioning v. Pueblo Contracting Services, Inc. (2004) 122 Cal.App.4th 1049, 1055-1056.)

Courts employ a two-step process to evaluate anti-SLAPP motions. (Equilon Enterprises v.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                                    July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**                               8:30 AM
**al.**

Judge: Honorable John P. Doyle              CSR: None
Judicial Assistant: M.F. Lopez              ERM: None
Courtroom Assistant: R.E. Lee               Deputy Sheriff: None

Consumer Cause, Inc. (2002) 29 Cal.4th 53, 61.) To invoke the protections of the statute, the
defendant must first show that the challenged lawsuit arises from protected activity, such as an
act in furtherance of the right of petition or free speech. (Ibid.) From this fact, courts " 'presume
the purpose of the action was to chill the defendant's exercise of First Amendment rights. It is
then up to the plaintiff to rebut the presumption by showing a reasonable probability of success
on the merits.' " (Ibid.) In determining whether the plaintiff has carried this burden, the trial
court considers "the pleadings, and supporting and opposing affidavits stating the facts upon
which the liability or defense is based." (Code Civ. Proc. § 425.16(b)(2); see Soukup v. Law
Offices of Herbert Hafif (2006) 39 Cal.4th 260, 291 ("Soukup").)

(b) Protected Activity
To meet their burden for the first prong of the anti-SLAPP analysis, Defendants must
demonstrate that Plaintiffs' claims arise from protected activity. That is, it must be that
"defendant's conduct by which plaintiff claims to have been injured falls within one of the four
categories described in subdivision (e) . . . 'the act underlying the plaintiff's cause' or 'the at
which forms the basis for the plaintiff's cause of action' must itself have been an act in
furtherance of the right of petition or free speech.' " (Equilon Enterprises v. Consumer Cause,
Inc. (2002) 29 Cal.4th 53, 63 (internal citations omitted).)

An " 'act in furtherance of a person's right of petition or free speech under the United States or
California Constitution in connection with a public issue' includes: (1) any written or oral
statement or writing made before a legislative, executive, or judicial proceeding, or any other
official proceeding authorized by law, (2) any written or oral statement or writing made in
connection with an issue under consideration or review by a legislative, executive, or judicial
body, or any other official proceeding authorized by law, (3) any written or oral statement or
writing made in a place open to the public or a public forum in connection with an issue of
public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right
of petition or the constitutional right of free speech in connection with a public issue or an issue
of public interest." (Code Civ. Proc. § 425.16(e).)

Defendants argue the FAC arises from protected activity under Code Civ. Proc. § 425.16(e)(1)-
(e)(4) because all causes of action relate to (1) comments that were of public interest or (2)
statements made before or during a class action lawsuit (BC672885 ).

The following conduct is the subject of Plaintiffs' causes of action: (1) false statements that
Hannaford and Margolin are or were subject to criminal proceedings; (2) false statements that
Plaintiffs are scammers and fraudsters, particularly with respect to the renting of the Palazzo; (3)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

| | |
|---|---|
| **19STCV11008** | July 2, 2020 |
| **SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et al.** | 8:30 AM |

| | |
|---|---|
| Judge: Honorable John P. Doyle | CSR: None |
| Judicial Assistant: M.F. Lopez | ERM: None |
| Courtroom Assistant: R.E. Lee | Deputy Sheriff: None |

false statements that Hannaford was evicted from her home in Australia; (4) false statements about the death of Hannaford's mother in relation to stalling lawsuits (see infra); (5) the use of Plaintiffs' likeness in connection with the aforementioned defamatory statements; (6) statements made before and during BC672885 as well as the filing of BC672885; and (7) the hiring of thugs and paparazzi to threaten, stalk, intimidate, and harass Plaintiffs.

Statements made in anticipation of BC672885 potentially fall under Code Civ. Proc. § 425.16(e)(2), and statements/filings in BC672885 fall under Code Civ. Proc. § 425.16(e)(1).

Specifically, Code Civ. Proc. § 425.16(e)(1) applies as the eleventh and twelfth causes of action for extortion and attempted extortion allege that BC672885 was filed for the purposes of extorting Plaintiffs with respect to the subject security deposit. (FAC ¶¶ 85, 244, 255; see Paul v. Friedman (2002) 95 Cal.App.4th 853, 865.)

Code Civ. Proc. § 425.16(e)(2) relates to statements made in connection with an issue under consideration by a government body. (See City of Costa Mesa v. D'Alessio Investments LLC (2013) 214 Cal.App.4th 358, 372-273.) The challenged statements need not be made before an official body, but must "relate[] to the substantive issues in the [underlying] litigation and [must be] directed to persons having some interest in the litigation." (Neville v. Chudacoff (2008) 160 Cal.App.4th 1255, 1266.) The defendant need not separately demonstrate that a statement or writing concerned an issue of public significance if it was made in connection with an issue under consideration or review by an official proceeding or body. (Briggs v. Eden Council for Hope and Opportunity (1999) 19 Cal.4th 1106, 1113.)

Such includes acts " 'preparatory to or in anticipation of' " the bringing of an action or other official proceeding. (Id. at p. 1115.) Courts look to the litigation privilege "as an aid" in determining whether a given communication falls within the ambit of Code Civ. Proc. § 425.16(e)(2). (Flatley v. Mauro (2006) 39 Cal.4th 299, 323.) "In California, the courts have held a prelitigation statement is protected by the litigation privilege of section 47, subdivision (b) when the statement is made in connection with a proposed litigation that is contemplated in good faith and under serious consideration. In other words, the prelitigation statements must have some connection or logical relation to the action . . . ." (A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc. (2006) 137 Cal. App. 4th 1118, 1128.)

The eleventh and twelfth causes of action are also premised on threats of filing BC672885 and threats of further reputational harm during a meet and confer for BC672885. (FAC ¶¶ 82, 98, 244, 246, 255, 257.) Threats of filing BC673885 with respect to the return of Defendants'

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                                  July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**              8:30 AM
**al.**

Judge: Honorable John P. Doyle          CSR: None
Judicial Assistant: M.F. Lopez          ERM: None
Courtroom Assistant: R.E. Lee           Deputy Sheriff: None

security deposit fall within the scope of Code Civ. Proc. § 425.16(e)(2) because such statements were made in a demand letter in anticipation of BC672885—which was actually filed—and relate to the subject matter of that suit. (Ibid.) Further, such statements were made to Margolin (FAC ¶ 82), who was eventually named a defendant in BC672885, or else to the entity which seemingly controlled the Palazzo, Zenith Entertainment, LLC, (Behrendt Decl. ¶ 7, Exhibit A ), and was also a defendant in BC672885. Nothing has been presented to the contrary.

The same is not true for the allegation that during a telephonic meet and confer Behrendt stated that Plaintiffs would suffer reputational harm should they not return the subject security deposit. (FAC ¶¶ 246, 257.) This is because neither the FAC nor Defendants' evidence indicate that such statements actually related to the subject matter of BC672885. While the security deposit was at issue, Behrendt's alleged statements seemingly related to reputational harm untethered to BC672885. (See FAC ¶ 9.) Notably, even Defendants acknowledge that in this regard the FAC is premised on statements related to republishing defamatory statements. (Motion at p. 1 [providing that the "threats in meet and confer conversations [relate] to republish[ing] defamatory material already in the public domain."].)

As to the subject defamatory statements as well as the use of Plaintiffs' likeness, Defendants argue such statements relate to matters of public interest under Code Civ. Proc. § 425.16(e)(3)-(e)(4).

"The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." (Damon v. Ocean Hills Journalism Club (2000) 85 Cal.App.4th 468, 479.) A statement concerns a "public issue" where it either "[(1)] concerned a person or entity in the public eye [Citations], [(2)] conduct that could directly affect a large number of people beyond the direct participants [Citations] or [(3)] a topic of widespread, public interest." (Rivero v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO (2003) 105 Cal.App.4th 913, 924.)

For the purposes of Code Civ. Proc. § 425.16(e)(3), "[a] 'public forum' is traditionally defined as a place that is open to the public where information is freely exchanged." (Damon, supra, 85 Cal.App.4th at p. 475.)

With respect to Code Civ. Proc. § 425.16(e)(4), our Supreme Court has stated,

The inquiry under the catchall provision instead calls for a two-part analysis rooted in the

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                    July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**              8:30 AM
**al.**

Judge: Honorable John P. Doyle              CSR: None
Judicial Assistant: M.F. Lopez              ERM: None
Courtroom Assistant: R.E. Lee               Deputy Sheriff: None

---

statute's purpose and internal logic. First, we ask what "public issue or [ ] issue of public
interest" the speech in question implicates—a question we answer by looking to the content of
the speech. (§ 425.16, subd. (e)(4).) Second, we ask what functional relationship exists between
the speech and the public conversation about some matter of public interest. It is at the latter
stage that context proves useful.

But the catchall provision demands "some degree of closeness" between the challenged
statements and the asserted public interest. (Weinberg, supra, 110 Cal.App.4th at p. 1132, 2
Cal.Rptr.3d 385.) . . . "[I]t is not enough that the statement refer to a subject of widespread public
interest; the statement must in some manner itself contribute to the public debate." (Wilbanks,
supra, 121 Cal.App.4th at p. 898, 17 Cal.Rptr.3d 497; see also Dyer v. Childress (2007) 147
Cal.App.4th 1273, 1280, 55 Cal.Rptr.3d 544 ["[t]he fact that 'a broad and amorphous public
interest' can be connected to a specific dispute" is not enough].)

What it means to "contribute to the public debate" (Wilbanks, supra, 121 Cal.App.4th at p. 898,
17 Cal.Rptr.3d 497) will perhaps differ based on the state of public discourse at a given time, and
the topic of contention. But ultimately, our inquiry does not turn on a normative evaluation of the
substance of the speech. We are not concerned with the social utility of the speech at issue, or the
degree to which it propelled the conversation in any particular direction; rather, we examine
whether a defendant—through public or private speech or conduct—participated in, or furthered,
the discourse that makes an issue one of public interest. (See All One, supra, 183 Cal.App.4th at
pp. 1203–1204, 107 Cal.Rptr.3d 861 [finding the "OASIS Organic seal" did not "contribute to a
broader debate on the meaning of the term 'organic' "]; Cross v. Cooper (2011) 197 Cal.App.4th
357, 375, 127 Cal.Rptr.3d 903 [finding the defendant's conduct "directly related" to an issue of
public interest because it "served th[e] interests" of preventing child abuse and protecting
children].)

(FilmOn.com Inc. v. DoubleVerify Inc. (2019) 7 Cal.5th 133, 149–51.)

Here, the statements at issue are as follows: (1) Hannaford and Morgolin are/were subject to
criminal proceedings/charges; (2) Hannaford has been evicted from her home in Australia; (3)
Plaintiffs commit fraud with regard to the Palazzo—for example, Hannaford and the minor
Plaintiffs reside within the Palazzo when guests rent the property, and the minor Plaintiffs
damage personal property while guests are sleeping; and (4) after Hannaford's mother passed
away in 2009, the Palazzo was "put in her name" so as to stall various legal actions. (FAC ¶¶ 65,
72.)

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**                    8:30 AM
**al.**

Judge: Honorable John P. Doyle          CSR: None
Judicial Assistant: M.F. Lopez          ERM: None
Courtroom Assistant: R.E. Lee           Deputy Sheriff: None

Circulation of the subject defamatory statements in online platforms, websites, media outlets and tabloid magazines accessible to millions (FAC ¶¶ 4, 60-61, 90, 116), meets the public forum requirement. (Code Civ. Proc. § 425.16(e)(3); Nygard, Inc. v. Uusi-Kerttula (2008) 159 Cal.App.4th 1027, 1038 [accessible magazines and websites constitute public forum].)

Further, the subject statements and the use of Hannaford's and Margolin's likeness in connection with such statements are of public interest as, by her own admission, Hannaford is a celebrity (FAC ¶¶ 1, 88), and the statements were circulated widely such that there was millions of dollars in losses from "countless" cancelled events at the Palazzo (FAC ¶ 87), and severed business ties with Hannaford and Margolin (see, e.g., FAC ¶ 101). Indeed, Plaintiffs admit that some of the allegedly defamatory stories were subject to "thousands of negative comments . . . ." (Opposition at p. 13.) Simply put, the subject statements pertain to "issue[s] in which the public is interested." (Nygard, Inc., supra, 159 Cal.App.4th at p. 1042 (italicization removed). Indeed, "the issue need not be 'significant' to be protected by the anti-SLAPP statute . . . . [such that] 'tabloid' issues [have been] held to be protected by the anti-SLAPP statute." (Ibid.)

Similarly, the use of paparazzi to gather news in which the public is interested is also protected. (Lieberman v. KCOP Television, Inc. (2003) 110 Cal.App.4th 156, 166.) Here, there is support for the contention that the paparazzi were involved with the subject defamatory statements as they are alleged to have surveilled Plaintiffs whose lifestyle tendencies were discussed in the same articles in which the defamatory statements were published. (See, e.g., FAC ¶¶ 6, 10.)

Thus, the Court concludes the subject defamatory statements, the use of Plaintiffs' likeness, and the use of paparazzi are protected under Code Civ. Proc. § 425.16(e)(3).

On the other hand, the hiring of thugs to threaten and harass is not protected speech or petitioning activity under Code Civ. Proc. § 425.16(e). Indeed, such is a noncommunicative action.

Plaintiffs, who are in pro per for the Motion, argue that the first prong of the anti-SLAPP analysis is not met as to any allegation in the FAC because (1) the subject conduct/statements are not privileged; (2) extortion is not protected activity; and (3) Defendants cannot both argue that the FAC is premised on protected activity and that they took none of the alleged actions.

While extortion is not protected, this exception to Code Civ. Proc. § 425.16(e) can only be invoked where the evidence relating to the extortion is uncontroverted. (Flatley v. Mauro (2006) 39 Cal.4th 299, 320.) Here, by way of their declarations, Defendants categorically deny all

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et al.**

July 2, 2020
8:30 AM

| | |
|---|---|
| Judge: Honorable John P. Doyle | CSR: None |
| Judicial Assistant: M.F. Lopez | ERM: None |
| Courtroom Assistant: R.E. Lee | Deputy Sheriff: None |

allegations presented in the FAC such that the exception is inapplicable.

Further, contrary to Plaintiffs' suggestions, the analysis for the first prong of the anti-SLAPP analysis does not relate to Defendants' rendition of the events, but rather the premise for Plaintiffs' claims within the FAC. (Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 63.)

Plaintiffs also seem to allege that misconduct such as child endangerment is not protected activity under the First Amendment, but "[n]either the form of the complaint nor the primary right at stake is determinative." (Baral v. Schnitt (2016) 1 Cal.5th 376, 395.) Rather, the anti-SLAPP analysis relates to the conduct underlying Plaintiffs' causes of action. (Ibid.; Equilon Enterprises, supra, 29 Cal.4th at p. 63.)

Finally, Plaintiffs' arguments as to privilege conflate the attorney-client and litigation privileges. (Opposition at pp. 6-7.) For the purposes of the first prong of the anti-SLAPP analysis for this Motion, only the litigation privilege is relevant and has already been discussed above.

In sum, the following is protected under Code Civ. Proc. § 425.16(e)(1)-(e)(3): the subject defamatory statements; the use of Plaintiffs' likeness; the hiring of paparazzi; threats to file BC672885; and the filing of BC672885. Every cause of action in the FAC is premised on the aforememtioned conduct. Plaintiffs' allegations as to (1) threats during a meet and confer and (2) the hiring of thugs are not protected.

(c) Minimal Merit
On the second component of the analysis, courts employ a "summary-judgment-like" procedure, "accepting as true the evidence favorable to the plaintiff and evaluating the defendant's evidence only to determine whether the defendant has defeated the plaintiff's evidence as a matter of law." (Gerbosi v. Gaims, Weil, West & Epstein, LLP (2011) 193 Cal.App.4th 435, 444.) In other words, the Court does not assess credibility, and the plaintiff is not required to meet the preponderance of the evidence standard. The Court accepts as true the evidence favorable to the plaintiff, who need only establish that his or her claim has "minimal merit" to avoid being stricken as a SLAPP. (Soukup, supra, 39 Cal.4th at p. 291.)

(i) Allegations Relating to BC672885
The FAC's allegations as to threatening to file BC672885 in a demand letter and the actual filing of BC672885 are barred by the litigation privilege.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 58

| | |
|---|---|
| **19STCV11008** | July 2, 2020 |
| **SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et al.** | 8:30 AM |

| | |
|---|---|
| Judge: Honorable John P. Doyle | CSR: None |
| Judicial Assistant: M.F. Lopez | ERM: None |
| Courtroom Assistant: R.E. Lee | Deputy Sheriff: None |

The litigation privilege set forth in Civ. Code § 47 generally applies "to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (Silberg v. Anderson (1990) 509 Cal.3d 205, 212.) Statements made in anticipation of litigation are subject to the litigation privilege. (Briggs v. Eden Council for Hope and Opportunity (1999) 19 Cal.4th 1106, 1115.) The "principle purpose of [the litigation privilege] is to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (Id. at p. 213.) "The litigation privilege is . . . relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (Flatley v. Mauro (2006) 39 Cal.4th 299, 323.)

The filing of a lawsuit falls squarely within the litigation privilege. Further, as discussed above, threats of filing BC673885 with respect to the return of Defendants' security deposit fall within the scope of the privilege because (1) such statements were made in a demand letter in anticipation of BC672885, which was actually filed (FAC ¶¶ 82, 98, 244, 246, 255, 257); (2) they relate to the subject matter of that suit (ibid.); and (3) such statements were made to Margolin (FAC ¶ 82), who was eventually named a defendant in BC672885, or else to the entity which seemingly controlled the Palazzo, Zenith Entertainment, LLC, (Behrendt Decl. ¶ 7, Exhibit A), and was also a defendant in BC672885.

Thus, the eleventh and twelfth causes of action to the extent premised on threatening to file BC672885 in a demand letter and the actual filing of BC672885 are stricken.

(ii) Claims Relying on Criminal Statutes
"There are at least three different ways alleged violations of criminal law can result in civil actions. First, and perhaps most commonly, violation of a criminal statute can be used to establish a breach of the standard of care or other element of an ordinary tort cause of action. (See 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 11, p. 55.) Second . . . a criminal statute can expressly or impliedly give rise to a private right of action for its violation. (Ibid.) Third, under some circumstances, a governmental or quasi-governmental agency can sue to enjoin further breaches of the statute on a public nuisance or related theory. (See People ex rel. Gallo v. Acuna (1997) 14 Cal.4th 1090, 1107–1108, 60 Cal.Rptr.2d 277, 929 P.2d 596.)" (Animal Legal Def. Fund v. Mendes (2008) 160 Cal.App.4th 136, 141)

Here, the first cause of action for child abuse, the tenth cause of action for aggravted stalking, and the twlefth cause of action for attempted extortion seek to enforce criminal statutes by way

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**          8:30 AM
**al.**

Judge: Honorable John P. Doyle              CSR: None
Judicial Assistant: M.F. Lopez              ERM: None
Courtroom Assistant: R.E. Lee               Deputy Sheriff: None

of a private action.

"The issue in a case such as this is primarily one of legislative intent. If the Legislature intended a private right of action, that usually ends the inquiry. If the Legislature intended there be no private right of action, that usually ends the inquiry. If we determine the Legislature expressed no intent on the matter either way, directly or impliedly, there is no private right of action (Moradi–Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287, 305, 250 Cal.Rptr. 116, 758 P.2d 58 (Moradi–Shalal )), with the possible exception that compelling reasons of public policy might require judicial recognition of such a right. (See id. at pp. 304–305, 250 Cal.Rptr. 116, 758 P.2d 58; see also Katzberg v. Regents of University of California (2002) 29 Cal.4th 300, 317, 127 Cal.Rptr.2d 482, 58 P.3d 339 [considerations for judicial recognition of private right of action for constitutional violations].)" (Id. at p. 142.)

None of the Penal Code sections at issue explicitly or impliedly provide for a private right of action. (See Penal Code §§ 273a [child abuse/endangerment], 524 [attempted extortion], 646.9(b)-(c) [aggravated stalking].) Thus, the first, tenth (to the extent premised on protected allegations), and twelfth causes of action (to the extent premised on protected allegations) are stricken because they fail to state a cause of action.

(iii) Remaining Allegations and Claims

(1) Defamation; False Light
Defendants argue that Plaintiffs cannot establish defamation because Defendants did not publish statements outside of BC672885; it is true that Hannaford's mother passed away; there is no evidence of malice; and the litigation privilege applies. Defendants assert the same arguments with respect to Plaintiffs' false light claim.

The tort of defamation consists of (1) a publication that is (2) false, (3) defamatory, and (4) unprivileged, and that (5) has a natural tendency to injure or that causes special damage. (Taus v. Loftus (2007) 40 Cal.4th 683, 720.)

The elements of a false light claim are (1) the defendant made a public disclosure of a fact about the plaintiff; (2) the fact disclosed was false and portrayed the plaintiff in a false light; (3) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; (4) the defendant knew or acted in reckless disregard of the falsity of the publicized fact and the false light in which the plaintiff would be placed, or the defendant acted negligently in failing to learn whether the publicized fact placed the plaintiff in a false light; and (5) the public disclosure

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                         July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**                    8:30 AM
**al.**

Judge: Honorable John P. Doyle              CSR: None
Judicial Assistant: M.F. Lopez              ERM: None
Courtroom Assistant: R.E. Lee               Deputy Sheriff: None

---

caused the plaintiff to sustain damages. (CACI no. 1802.)

Here, Plaintiffs' testimony as well as the verified FAC create triable issues with respect to falsity
and publication; indeed, the subject articles contain quotations from which—based on the details
relating to the speaker's experience at the Palazzo—it could be inferred that the speaker was a
Defendant. (See, e.g., FAC, Exhibit A [article containing many of the subject statements
discussing damage to the subject piano]; Hannaford Decl. ¶ 14; Margolin Decl. ¶ 39 [providing
the Shepherds are the only tenants to have severely damaged the subject piano].) There is also
evidence that, for example, Hannaford's mother did not pass away in 2009. (Margolin Decl. ¶ 28
[Hannaford's mother pursued a personal injury lawsuit in 2015].) Defendants' arguments to the
contrary are not dispositive. Further, the litigation privilege does not apply to statements made to
the press. (See GetFugu, Inc. v. Patton Boggs LLP (2013) 220 Cal.App.4th 141, 152.)

As to an actual malice standard, Defendants argue such standard applies because Plaintiffs are
either limited or all-purpose public figures.

"[T]he 'limited purpose' public figure loses certain protection for his reputation only to the
extent that the allegedly defamatory communication relates to his role in a public controversy."
(Id. at pp. 253–54.)

Characterizing a plaintiff as a limited purpose public figure requires the presence of certain
elements. (Ampex Corp. v. Cargle (2005) 128 Cal.App.4th 1569, 1577, 27 Cal.Rptr.3d 863
(Ampex).) First, there must be a public controversy about a topic that concerns a substantial
number of people. In other words, the issue was publicly debated. (Gilbert v. Sykes (2007) 147
Cal.App.4th 13, 25, 53 Cal.Rptr.3d 752 (Gilbert).) Second, the plaintiff must have voluntarily
acted to influence resolution of the issue of public interest. To satisfy this element, the plaintiff
need only attempt to thrust himself or herself into the public eye. (Ampex, supra, 128
Cal.App.4th at p. 1577, 27 Cal.Rptr.3d 863.) Once the plaintiff places himself or herself in the
spotlight on a topic of public interest, his or her private words and acts relating to that topic
become fair game. (Gilbert, supra, 147 Cal.App.4th at p. 25, 53 Cal.Rptr.3d 752.) However, the
alleged defamation must be germane to the plaintiff's participation in the public controversy.
(Ampex, supra, 128 Cal.App.4th at p. 1577, 27 Cal.Rptr.3d 863.)

(Grenier v. Taylor (2015) 234 Cal.App.4th 471, 484.)

Here, assuming the publicly debated controversy relates to either Plaintiffs' criminal
charges/proceedings, Hannaford's eviction history, fraud pertaining to the Palazzo, or

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                          July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**          8:30 AM
**al.**

Judge: Honorable John P. Doyle              CSR: None
Judicial Assistant: M.F. Lopez              ERM: None
Courtroom Assistant: R.E. Lee               Deputy Sheriff: None

Hannaford's mother (which is not at all clear), Plaintiffs did not act to resolve such controversies
by voluntarily thrusting themselves into the public eye. Importantly, the subject publications
cannot make Plaintiffs limited public figures. (Price v. Operating Engineers Local Union No. 3
(2011) 195 Cal.App.4th 962, 971-972.) Further, the only reference to public involvement
suggests that Margolin and Hannaford participated in a TV interview after the subject
defamatory statements had been published. (See Motion at p. 5.) Thus, Plaintiffs are not limited
public figures.

Further, the Court rejects that Margolin and the minor Plaintiffs are all-purpose public figures.
Defendants have provided no evidence these Plaintiffs "ha[ve] 'achiev[ed] such pervasive fame
or notoriety that [they] become[] a public figure for all purposes and in all contexts.' " (Reader's
Digest Assn. v. Superior Court (1984) 37 Cal.3d 244, 253.)

On the other hand, Hannaford's own evidence indicates she is an all-purpose public figure.
Indeed, Hannaford provides she is an award winning real estate developer and an award
nominated actress (Hannaford Decl. ¶ 2), and "celebrity" (Verified FAC ¶¶ 1, 88), "best known
for playing Kitty Sullivan in the long-running television drama 'The Sullivans' which was
viewed in over 70 countries worldwide and featured actors such as Sam Neill, Kylie Minogue
and Mel Gibson." (FAC ¶ 12.) This is sufficient. (See, e.g., Douglass v. Hustler Magazine, Inc.
(1985) 769 F.2d 1128, 1141 [actress and playboy model public figure]; Burnett v. Nat'l Enquirer,
Inc. (1983) 144 Cal.App.3d 991, 1008 [case "tried upon the premise" plaintiff, "a well known
actress, comedienne and show business personality," was a public figure].) Thus, Hannaford
must demonstrate actual malice.

Actual malice requires that the statement at issue be made "with knowledge that it was false or
with reckless disregard of whether it was false or not." (New York Times Co. v. Sullivan (1964)
376 U.S. 254, 280.)

"[R]eckless conduct is not measured by whether a reasonably prudent man would have
published, or would have investigated before publishing. There must be sufficient evidence to
permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his
publication. Publishing with such doubts shows reckless disregard for truth or falsity and
demonstrates actual malice." (P. 731, 88 S.Ct. at p. 1325.)

The quoted language establishes a subjective test, under which the defendant's actual belief
concerning the truthfulness of the publication is the crucial issue. (See Alioto v. Cowles
Communications, Inc. (N.D.Cal.1977) 430 F.Supp. 1363, 1365–1366.) This test directs attention

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                                July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**                           8:30 AM
**al.**

Judge: Honorable John P. Doyle                    CSR: None
Judicial Assistant: M.F. Lopez                    ERM: None
Courtroom Assistant: R.E. Lee                     Deputy Sheriff: None

to the "defendant's attitude toward the truth or falsity of the material published ... [not] the
defendant's attitude toward the plaintiff." (Widener v. Pacific Gas & Electric Co. (1977) 75
Cal.App.3d 415, 434, 142 Cal.Rptr. 304.)

. . .

[A]ctual malice can be proved by circumstantial evidence. "[E]vidence of negligence, of motive
and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate
inferences, the fact of a defendant's recklessness or of his knowledge of falsity." (Goldwater v.
Ginzburg (2d Cir.1969) 414 F.2d 324, 342; Widener v. Pacific Gas & Electric Co., supra, 75
Cal.App.3d 415, 434, 142 Cal.Rptr. 304.) A failure to investigate (see Widener v. Pacific Gas &
Electric Co., supra, 75 Cal.App.3d 415, 434, 142 Cal.Rptr. 304), anger and hostility toward the
plaintiff (id., at p. 436, 142 Cal.Rptr. 304), reliance upon sources known to be unreliable (Curtis
Publishing Co. v. Butts, supra, 388 U.S. 130, 156, 87 S.Ct. 1975, 1992, 18 L.Ed.2d 1094; Pep v.
Newsweek, Inc. (S.D.N.Y.1983) 553 F.Supp. 1000, 1002), or known to be biased against the
plaintiff (Fisher v. Larsen (1982) 138 Cal.App.3d 627, 640, 188 Cal.Rptr. 216; Burns v.
McGraw-Hill Broadcasting Co., Inc. (Colo.1983) 659 P.2d 1351, 1361–1362)—such factors
may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the
truth of his publication.

(Reader's Digest Assn., supra, 37 Cal.3d at pp. 256–58.)

Actual malice must be shown by "clear and convincing evidence", and—on a summary judgment
or anti-SLAPP motion—the plaintiff must meet her burden by demonstrating that "the evidence
and all the inferences which can reasonably be drawn from it . . . meet the higher standard." (Id.
at p. 252.) The Motion "should be granted unless it appears that actual malice may be proved at
trial by clear and convincing evidence." (Basich v. Allstate Ins. Co. (2001) 87 Cal.App.4th 1112,
1119.)

Here, Hannaford has provided sufficient evidence of actual malice with regard to Defendants'
alleged statements regarding her renting of the Palazzo. Indeed, Hannaford provides that on the
basis of video evidence, the Shepherds' check-in acknowledgement that the subject piano was
not damaged, and the Shepherds' personal experiences staying at the Palazzo, Defendants'
statements suggesting Hannaford commits fraud with respect to the Palazzo, rents the Palazzo to
tenants in disrepair, and resides at the Palazzo whilst tenants are present were made with actual
knowledge that they were false. (Hannaford Decl. ¶¶ 19-21; Margolin Decl. ¶¶ 39-67.)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**                                                              July 2, 2020
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et**                        8:30 AM
**al.**

Judge: Honorable John P. Doyle          CSR: None
Judicial Assistant: M.F. Lopez          ERM: None
Courtroom Assistant: R.E. Lee           Deputy Sheriff: None

On the other hand, Hannaford has not met her burden with respect to any other statement that
pertains to her—i.e., that Hannaford is/was subject to criminal proceedings, that she was evicted
from her property in Australia, or that in 2009 she transferred title for the Palazzo to her
deceased mother so as to evade lawsuits. While Hannaford has provided some evidence that
these statements are false, she has not provided anything approaching "clear and convincing"
evidence of knowledge of falsity or reckless disregard for falsity. While perhaps evidence of an
extortion scheme would provide support for the notion that Defendants harbor ill will for
Hannaford, the evidence for such a scheme is slim. Further, much of Plaintiffs' evidence lacks
foundation—for example, Plaintiffs provide the Shepherds knew Hannaford's mother was not
dead because of a lawsuit she pursued in 2015, but provide no reason why Defendants should
have been aware of such a lawsuit. Because Hannaford has failed to show actual malice with
regard to statements not pertaining to her renting of the Palazzo, Hannaford's defamation and
false light claims (Reader's Digest Assn., supra, 37 Cal.3d at p. 265 [actual malice standard
applies to all claims premised on defamatory statements]), are stricken to the extent premised on
such statements.

The Motion is denied as to the remainder of Plaintiffs' defamation and false light claims which
are supported with admissible evidence as explained above.

(2) Violation of Public Right of Publicity
Defendants argue Plaintiffs cannot establish a statutory violation of the right of publicity
because, to the extent Defendants published the subject statements, such publications were
newsworthy. Similarly, Defendants argue Plaintiffs cannot establish a common law violation of
the right of publicity because the subject statements were not bare commercial speech.

With regard to a statutory violation, Civ. Code § 3344(a) provides in relevant part, "Any person
who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on
or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting
purchases of, products, merchandise, goods or services, without such person's prior consent, or,
in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any
damages sustained by the person or persons injured as a result thereof. . . ."

Importantly, "a use of a name, voice, signature, photograph, or likeness in connection with any
news, public affairs, or sports broadcast or account, or any political campaign, shall not
constitute a use for which consent is required under subdivision (a) [of Civ. Code § 3344]." (Civ.
Code § 3344(d).)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

## Civil Division

Central District, Stanley Mosk Courthouse, Department 58

19STCV11008                                                              July 2, 2020
SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et                       8:30 AM
al.

Judge: Honorable John P. Doyle              CSR: None
Judicial Assistant: M.F. Lopez              ERM: None
Courtroom Assistant: R.E. Lee               Deputy Sheriff: None

Further, "California has long recognized a common law right of privacy (see, e.g., Melvin v. Reid (1931) 112 Cal.App. 285, 297 P. 91), which provides protection against four distinct categories of invasion (see Kapellas v. Kofman (1969) 1 Cal.3d 20, 35, fn. 16, 81 Cal.Rptr. 360, 459 P.2d 912). These four distinct torts . . . are: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." (Eastwood v. Superior Court (1983) 149 Cal.App.3d 409, 416.) At issue here is the appropriation of Plaintiffs' likeness. "A common law cause of action for appropriation of name or likeness may be pleaded by alleging (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." (Id. at p. 417.)

Plaintiffs' claims for use of likeness lack minimal merit because their images were used in connection with matters which were of public interest. "Though both celebrities and non-celebrities have the right to be free from the unauthorized exploitation of their names and likenesses, every publication of someone's name or likeness does not give rise to an appropriation action. Publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it, is not ordinarily actionable. . . . Public interest attaches to people who by their accomplishments or mode of living create a bona fide attention to their activities." (Dora v. Frontline Video, Inc. (1993) 15 Cal.App.4th 536, 542.) The limited nature of such public interest is not relevant. (Id. at p. 543.) Thus, such claims are stricken.

(3) Stalking
Defendants argue the ninth cause of action for stalking fails because there is no evidence or allegation that Plaintiffs asked Defendants to cease their actions or that Defendants violated a restraining order. (Civil Code § 1708.7(a)(3)(A)-(B).)

Plaintiffs' Opposition is silent on this point such that Defendants' argument is conceded. (DuPont Merck Pharmaceutical Co. v. Superior Court (2000) 78 Cal.App.4th 562, 566.) In any case, there is no allegation in the FAC that there exists a restraining order or that Plaintiffs asked Defendants to stop stalking them. Thus, the ninth cause of action is stricken to the extent premised on the use of paparazzi as it fails to state a cause of action.

(4) Civil Extortion
Defendants argue the eleventh cause of action for civil extortion fails because (1) there was no

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et al.**

July 2, 2020
8:30 AM

Judge: Honorable John P. Doyle
Judicial Assistant: M.F. Lopez
Courtroom Assistant: R.E. Lee

CSR: None
ERM: None
Deputy Sheriff: None

---

actionable threat; (2) Plaintiffs paid no money to Defendants; (3) "Plaintiffs' allegations show no damages because the alleged threat is post-publication" (Motion at p. 13); and (4) the litigation privilege applies.

"[O]ur Supreme Court has recognized a cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution. (See Leeper v. Beltrami (1959) 53 Cal.2d 195, 203-204 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803]; Woodham v. Allen (1900) 130 Cal. 194, 198-200 [62 P. 398].) It is essentially a cause of action for moneys obtained by duress, a form of fraud." (Fuhrman v. California Satellite Sys. (1986) 179 Cal.App.3d 408, 426, disapproved of on other grounds by Silberg v. Anderson (1990) 50 Cal.3d 205.)

Of critical importance, an actionable claim requires that Plaintiffs paid Defendants money. (Ibid.)
Here, there is no evidence or allegation that Plaintiffs ever paid Defendants any money. Thus, the eleventh cause of action—to the extent premised on protected activity—is stricken.

(d) Summary
In conclusion, the Anti-SLAPP Motion is granted in part.

Specifically, the first cause of action for child endangerment, the seventh cause of action for statutory violation of right of publicity, and the eighth cause of action for common law violation of right of publicity are entirely stricken.

The ninth through twelfth causes of action are stricken to the extent premised on allegations other than (1) Defendants' threats during a meet and confer and (2) the hiring of thugs (unprotected activity).

The Motion is denied as to the second through sixth causes of action to the extent asserted by Margolin and the minor Plaintiffs.

The Motion is granted as to the second through sixth causes of action to the extent asserted by Hannaford and premised on statements unrelated to her renting of the Palazzo.

The matter is argued and the tentative ruling becomes the order of the Court.

Objections are overruled.

---

Minute Order                                    Page 16 of 17

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 58

**19STCV11008**
**SUSAN HANNAFORD, et al. vs KEVIN RYAN BEHRENDT, et al.**

July 2, 2020
8:30 AM

Judge: Honorable John P. Doyle
Judicial Assistant: M.F. Lopez
Courtroom Assistant: R.E. Lee

CSR: None
ERM: None
Deputy Sheriff: None

The defendants' Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion) filed by Jeremy Shepherd, Hisano Shepherd, Kevin Ryan Behrendt on 02/18/2020 is Granted in Part.

Status Conference is held.

Status Conference (All-Purpose) is scheduled for 10/01/2020 at 01:30 PM in Department 58 at Stanley Mosk Courthouse.

Conference Re: Motion Hearing Setting is scheduled for 10/01/2020 at 01:30 PM in Department 58 at Stanley Mosk Courthouse.

Order to Show Cause Re: Dismissal of Unnamed Does and Unserved Defendants is scheduled for 10/01/2020 at 01:30 PM in Department 58 at Stanley Mosk Courthouse.

On the Court's own motion, the Final Status Conference scheduled for 11/04/2020 is advanced to this date and continued to 04/14/2021 at 09:00 AM in Department 58 at Stanley Mosk Courthouse.

On the Court's own motion, the Jury Trial scheduled for 11/09/2020 is advanced to this date and continued to 04/19/2021 at 09:00 AM in Department 58 at Stanley Mosk Courthouse.

The Judicial Assistant is ordered to return to plaintiff Marquessa Margolin two previously lodged envelopes (each containing a digital video disc).

Defendant is to give notice.

EXHIBIT C



**CARLSON
& COHEN, LLP**

LAWYERS

16133 Ventura Boulevard, Suite 1175
Encino, California 91436-2416

**MORGAN M. HALFORD**
Attorney at Law

Telephone: (818) 986-4979
Facsimile:  (818) 995-7335
Email:  mhalford@carlsoncohen.com

November 7, 2022

*Sent via Electronic and First Class Mail*

Kevin Behrendt, Esq.
Dermer Behrendt
13101 Washington Boulevard, Suite 407
Los Angeles, California 90066

> Re:   **Petition to Establish Fact of Death of Norma Nancy Hannaford (nee Parry);
>       LASC Case No. 20STPB10135**

Dear Mr. Behrendt,

As you are aware from our previous communications, this office was engaged to represent Norma Hannaford in the Petition to Establish Fact of Death of Norma Nancy Hannaford (nee Parry) filed by your client, Brent Hannaford, which is currently pending before the Los Angeles Superior Court, bearing LASC Case Number 20STPB10135.

I have reviewed the Petition and its Exhibits, as well as other documents filed in this case, including preparing my clients Motion for Summary Judgment, the accompanying Separate Statement of Undisputed Facts, and the Declarations in support of Summary Judgment.

It is my understanding that Ms. Norma Hannaford is a resident of Australia. It is also my understanding that Mr. Brett Hannaford is likewise a resident of Australia. With respect to the two parcels of real property mentioned in the Petition, specifically, 865 Comstock Avenue, Unit 6B, Los Angeles, California and 13200 Mulholland Drive, Los Angeles, California 90210, a search of the real property official records with the Los Angeles County Registrar Recorder County Clerk and Los Angeles County Property Tax Assessor and Los Angeles County Tax Collector records show that title to neither parcel is held by Ms. Norma Hannaford.

Accordingly, I do not understand how the court could have jurisdiction over this matter.

Supplemental Probate Notes filed by you indicate your petition was filed under *California Probate Code* section 200 *et seq. California Probate Code* section 200 states "If title to or an interest in real or personal property is affected by the death of a person, another person who claims an interest in the property may commence proceedings pursuant to this chapter to establish the fact of the death."

As a preliminary matter, no title to or interest in either property referenced in the petition would be affected by Norma Hannaford's eventual death (which incidentally, has not occurred). Thus, the petition fails as a matter of law as Mr. Hannaford lacks standing to bring the petition under Cal. Prob Code §200 as Norma Hannaford owns no real property in the State of California and consequently, probate court lacks subject matter jurisdiction. The petition ends there.

Kevin Behrendt
November 7, 2022
Page 2

Furthermore, *California Probate Code* section 201, subdivision (a) states: "Proceedings under this chapter **shall** be commenced in the superior court of the county of which the decedent was a **resident at the time of death** or in the superior court of any county in which the property is located" (emphasis added).

*California Probate Code* section 201(b) states: "Proceedings under this chapter **shall** be commenced by filing a petition that sets forth **all** of the following information: (1) The jurisdictional facts; (2) A particular description of the affected property and of the interest of the petitioner in the property" (emphasis added).

However, the Petition does not allege any of the required jurisdictional facts. The Petition does not allege that Ms. Norma Hannaford was a resident of the County of Los Angeles at the time of her purported death and Ms. Norma Hannaford does not hold title to any real property in the County of Los Angeles of which I am aware.

Your client's Petition is also confusing in that many of its allegations do not concern Ms. Hannaford at all, but instead focus on Ms. Hannaford's daughter Susan Hannaford and her granddaughter, Marquessa Margolin. In reading the Petition, one is given the strong impression that the Petitioner is more concerned about the actions of Susan Hannaford and Marquessa Margolin than whether or not Norma Hannaford is alive.

Additionally, at Paragraph 18 of the Petition you allege "...Hannaford and Margolin have brought at least two other lawsuits related to the question of whether or not Parry is actually alive: "*Hannaford, et al., v. Behrendt, et al*, 19STCV11008 and *Hannaford v. Seven Satellite PTY Ltd., et al.*, 19STCV13245."

Yet, according to the LASC Register of Actions these cases are both classified as being for "Defamation / Slander".

As the Petition has provided no further information related to these litigations, it is difficult to understand how two defamation lawsuits are related to the question of whether or not Ms. Hannaford is alive, or why such an allegation would have been included in the Petition.

However, the fact that you are personally named as a defendant in at least one of the litigations (LASC Case No. 19STCV11008) does raise questions in my mind about your role in these women's lives, what past dealings you may have had with them, and in what manner you are connected to them.

It was also brought to my attention that Ms. Hannaford's daughter Susan Hannaford filed a restraining order against you and your business partner, Jeremy Shepherd (LASC Case No. 20STR003298) on June 30, 2020, which attaches a report from the Los Angeles Police Department detailing your criminal threats and harassment of Susan Hannaford and her family.

Kevin Behrendt
November 7, 2022
Page 3

The restraining order was ordered related by Judge Susan L. Lopez-Giss to the defamation
and extortion case filed by Susan Hannaford and family against you on April 2, 2019 entitled
*Susan Hannaford, Marquessa Margolin, Emmanuel Margolin, a minor, Contessa, M.H, a minor
vs. Kevin Behrendt et al* (LASC Case No. 19STCV11008).

Yet, disturbingly merely a few months after Susan Hannaford filed a restraining order on
June 30, 2020 against you and your business partner, you filed the instant petition on
December 7, 2020 against two parcels of Susan Hannaford's real property purportedly on
behalf of a relative in a foreign country (Australia) Mr. Brett Hannaford, that has been
estranged from the Hannaford family for approximately thirty years.

The petition appears vindictive and retaliatory, as merely a few months after the restraining
order was filed against you and your partner by Susan Hannaford, you filed the instant Petition.
It further raises questions in my mind as to whether or not you may have some personal
motivations in this matter, unrelated to Brett Hannaford.

It also raises questions in my mind about the single plaintiff class action lawsuit you filed
against Norma Hannaford (LASC Case No. BC672885) which I understand you filed on behalf
of your business partner Jeremy Shepherd, who is also named in the restraining order filed by
Susan Hannaford (LASC Case No. 20STR003298) and is also a co-defendant in the
defamation/slander and extortion action filed by Susan Hannaford and family against you
(*Susan Hannaford, Marquessa Margolin, Emmanuel Margolin, a minor, Contessa, M.H, a
minor vs. Kevin Behrendt, Jeremy Shepherd et al* (LASC Case No. 19STCV11008).

Despite Judge Doyle's ruling in LASC Case No. 19STCV11008 that the fraud allegations
against Susan Hannaford and family made by you were "knowingly false" and made with
"actual malice" you continue to maliciously prosecute these false allegations in the frivolous
single plaintiff class action complaint currently before the court.

On July 2, 2020, in the defamation/slander action against you (LASC Case No. 19STCV11008)
Judge John P. Doyle denied your anti-SLAPP motion on all defamation causes of action ruling:

"Hannaford has provided sufficient evidence of **actual malice** with regard to Kevin Behrendt
and the Shepherds alleged statements regarding her renting of the Palazzo Beverly
Hills....Defendants statements suggesting Hannaford commits fraud with respect to the
Palazzo Beverly Hills...**were made with actual knowledge that they were false.**"

(July 2, 2020; Case No. 19STCV11008; Judge John P. Doyle; Page 13 of 17; <u>Exh 1</u>).

Judge Doyle further ruled that the fraud allegations made by you against Susan Hannaford and
Marquessa Margolin and the minor children including your false statements to New Idea
Magazine that **"Norma definitely died in 2009 and then the properties were put into her
name, suing a dead person is hard!"** were false.

Kevin Behrendt
November 7, 2022
Page 4

Judge Doyle further ruled:

**"Hannaford's mother did not pass away in 2009**...Hannaford's mother pursued a personal lawsuit in 2015" (July 2, 2020; Order; Judge John P. Doyle; Page 13, 14 of 17, **Exh 1**).

You are the source of all false reporting to the Australian news and tabloid media including New Idea Magazine, owned by Seven West Media (LASC Case No. 19STCV11008) and parent corporation, Channel Seven News Australia (Case No. 19STCV13245) which is the subject of two defamation/slander lawsuits. Incidentally, the Hannaford family prevailed on their $250 million dollar defamation lawsuit against Seven Sunday Night News, receiving a full retraction, apology and confidential settlement with Channel Seven in which the program Seven Sunday Night News was axed by the network.

On August 21, 2017, you filed a purported class action (which after nearly six years remains a class of one person) on behalf of your business partner Jeremy Shepherd against Norma Hannaford (nee Parry) (LASC Case No. BC672885). Strikingly, you failed to personally serve the complaint and instead served the complaint pursuant to an order for publication because both Norma Parry and Marquessa Margolin are domiciled in Australia.

On December 3, 2018 in LASC Case No. BC672885, you filed a sworn declaration under penalty of perjury with the court, admitting Norma Hannaford (nee Parry) is alive stating "...there is no question that Norma Parry has already received actual knowledge of the current action" (**Exh. 2**) which directly contradicts the fact of death petition you filed with the court on December 7, 2020 in Case No. 20STPB10135, seeking an order Norma Hannaford be falsely declared deceased on or before December 1, 2015. Suffice to say, this wildly contradictory position cannot be maintained.

Is your position that Norma Hannaford is alive and received "actual knowledge" of the class action you filed against her as stated in your declaration under penalty of perjury on December 3, 2018 or is it your position that Norma Hannaford died three years earlier, on or before December 1, 2015?

It defies logic that you would be simultaneously suing Norma Hannaford in class action court on the basis she is alive, whilst concurrently contradictorily alleging in the instant petition she is deceased (**Exh 3**). Clearly, you cannot have it both ways.

Incidentally, the blank verification of Mr. Hannaford signed on November 6, 2020 and attached to the petition, was clearly sent by you to Mr. Hannaford for signature prior to your drafting of the petition over a month later on December 7, 2020, in violation of the California Rules of Professional Conduct.

Kevin Behrendt
November 7, 2022
Page 5

You sent me an email previously in which you stated that a signed, notarized statement from Ms. Hannaford that she did not wish to have any further contact with Mr. Hannaford would be sufficient to resolve this matter entirely. Yet you also emailed Ms. Hartmann Esq., the attorney for Emmanuel Margolin II, that a statement from Norma's attorney attesting under penalty of perjury to having met Norma Hannaford would likewise resolve the matter.

Yet, when you were provided with sworn and transcribed statements to the court from Norma Hannaford's attorney, Mr. William Michael Hartman Esq., an attorney with an impeccable record with over forty years at the bar, attesting under penalty of perjury that he had met with Norma Hannaford in 2020, you completely disregarded Mr. Hartman Esq., statements.

Additionally, you were provided with yet another sworn statement from Mr. Hartman's Esq., legal assistant, Julie Weiss attesting under penalty of perjury to having met with Norma Hannaford in mid-2020, which also did not result in your dismissal of the petition, despite your assurances to dismiss the petition upon receiving these sworn declarations.

In fact, according to the Declaration of Ms. Weiss dated July 31, 2022 you engaged in witness intimidation by contacting Ms. Weiss on her personal cell phone, a number that was never provided to you, nor publicly disclosed, left Ms. Weiss intimidating voice mails, and even threatened Ms. Weiss when she stated to you that she had met Norma Hannaford (nee Parry). You then threatened Ms. Weiss and even told Ms. Weiss that she was the "only person" to have seen Norma Hannaford intimidating and pressuring Ms. Weiss into changing and falsifying her testimony, which Ms. Weiss refused to do (**Exh. 4**).

You were also served with a Cease and Desist letter from Norma Hannaford's Australian Senior Legal Counsel, Ian Kennedy from McLaughlins Lawyers, Gold Coast, Australia advising that Norma Hannaford has no obligation or intention to provide you with any personal information, which you also disregarded (**Exh. 5**).

Notwithstanding the above, I have been advised by representatives of Ms. Hannaford that she executed a Will, which was duly witnessed and notarized, in which she specifically disinherited her son, Brett Hannaford.

Would not the fact that Ms. Hannaford specifically chose to disinherit her son, likewise resolve this matter, as it establishes Mr. Hannaford is not and will never be an intestate heir, especially in light of the fact that Norma Hannaford does not hold title to either of the parcels of real property listed in the Petition?

As you know, the burden of proof is on the Petitioner to establish the fact of Norma Hannaford's death. However, to date, no evidence has been provided to establish any of the allegations of your client's Petition and it is clear from your client's thirty-year estrangement with Norma Hannaford, that she has no intention of having any communication with her son. Moreover, there is a substantive issue of lack of subject matter jurisdiction in this case, that voids and nullifies the entire proceedings.

Kevin Behrendt
November 7, 2022
Page 6

---

You stated during our phone conversation that Mr. Hannaford's desire was to "find his mother". If this was truly the case, I find it odd that Mr. Hannaford would be emailing Norma Hannaford wishing her Merry Christmas and looking forward to "catching up" as recently as December 2018 (**Exh. 6**) if Mr. Hannaford was in fact scouring newspapers in Australia and "hiring private investigators" to purportedly find his mother that has been allegedly missing for fifteen years as falsely alleged in the petition.

Moreover, I would think that his goal would be better accomplished by searching for her in Australia, which by your client's own admission in the petition, is her last known whereabouts, rather than filing a petition in Los Angeles Superior Court.

Additionally, you repeatedly mistakenly misapply the law as it relates to subject matter jurisdiction. As expounded above, the petition fails out of the gate as Norma Hannaford has no title nor interest in any real property in the State of California, a mandatory statutory jurisdictional pre-requisite under *California Probate Code* section 200.

The second prong of the statutory jurisdictional test applies only if there is title or interest in real property affected at the time of death (which there is none). Notwithstanding this fact, *California Probate Code* section 201(a) requires "...proceedings under this chapter be commenced in the superior court of the county of which the decedent was a **resident at the time of death**" (emphasis added).

As an ancillary matter, it is clear you rely on three mistaken presumptions of residency. Firstly, Ms. Norma Hannaford's several-day hotel residency on vacation at the Beverly Hills Hilton Hotel in 2014 does not constitute permanent residency, let alone residency in the State of California at the time of alleged death, which incidentally has not occurred.

It is wholly irrelevant that at some point during an alleged decedents lifetime, a person visited the State of California or in this case, stayed at the Hilton Hotel as a transient lodger, as subject matter jurisdiction requires an alleged decedent be resident in the State of California *at the time of death*. Incidentally, the Beverly Hilton Hotel stay only reinforces the fact that Ms. Norma Hannaford does not own any property in the State of California (why would Norma Hannaford stay as a transient lodger in a hotel in Beverly Hills if she owns two pieces of real property in Beverly Hills as you falsely allege?).

As Norma Hannaford's Australian Heritage Bank Visa Credit Card Statements confirm, Norma Hannaford returned to her place of birth and citizenship in Australia immediately after her vacation at the Beverly Hills Hilton Hotel, and resumed her daily credit card activity in Surfers Paradise, Queensland, which not only proves life and the fact that Norma Hannaford is not missing and has not been missing for fifteen years, it also proves Australian residency and domicile, at the time of alleged death. This is also confirmed by Mr. Hannaford's own petition, which alleges Norma Hannaford's last known whereabouts was in Surfers Paradise, Queensland, Australia, including at the purported time of death (which, incidentally, has not occurred). *See* Norma Hannaford Heritage Bank Australia Credit Card Statements; (**Exh 7**).

Kevin Behrendt
November 7, 2022
Page 7

Secondly, you misstate Susan Hannaford's April 26, 2021, declaration, notably paragraph (5) states "My mother Norma Hannaford, has been living with both me, my daughter and family for over twenty years". However contrary to your email, **at no time** did Susan Hannaford reference the State of California. As you are aware, Susan Hannaford is Australian, as is every member of her family. In fact, Susan Hannaford owned a beachfront house in Australia for over thirty years.

Thirdly, you misstate Ms. Margolin's declaration attesting to living with Norma Hannaford for twenty years, including on or before December 1, 2015, as being in the State of California. However, **at no time** did Ms. Margolin ever state that she resided for twenty years in the State of California, nor could she, as both Ms. Marquessa Margolin and Ms. Norma Hannaford are Australian citizens.

It strikes me as odd that your recent email claims to have personal knowledge of where each member of the Hannaford family has resided over the past twenty years, when you have no personal knowledge of their whereabouts, let alone residency or domicile.

It also raises the question how you can make a presumption as to place of residence for the past twenty years, when there is no reference to residency in the petition (other than Norma Hannaford's last known whereabouts was in Surfers Paradise, Queensland, Australia) and there is no evidence to support a presumption of residency in the United States, let alone in the State of California. Indeed, your argument of death and residence in the State of California is directly contradicted by Norma Hannaford's Heritage Australia Bank Credit Card Statements.

In fact, to the contrary Ms. Margolin stated in her May 10, 2022 declaration "…during the period **December 2009 through February 2019, I was not physically present in the United States, and resided in Surfers Paradise, Queensland, Australia with Norma at her condominium in Surfers Paradise**". Not only was Ms. Margolin not resident in the State of California at the purported time of death, Ms. Margolin was not physically present in the United States for approximately ten years, during her residency in Queensland, Australia with Norma Hannaford.

In the September 14, 2022 declaration in support of Summary Judgment, Ms. Margolin attaches substantial evidence in support, including two Australian law degrees from Central Queensland University, Faculty of Law (Decl. Margolin Sept. 14, 2022; Exh. 7) and Bond University, Faculty of Law (Decl. Margolin Sept. 14, 2022; Exh. 8) covering the period 2013 through 2019, Norma Hannaford's purchase contract for a luxury condominium in Surfers Paradise, Queensland, Australia dated 2011 (Decl. Margolin Sept. 14, 2022; Exh. 2, Exh 3. Exh 4), an Australian Driver's License issued by the State of Queensland, Australia (which can only be lawfully issued to a resident of the State of Queensland, Australia, Decl. Margolin Sept. 14, 2022; Exh. 5) with the matching address for Norma Hannaford in Surfers Paradise, Queensland, Australia, covering the period of purported death from 2013 through 2018, Norma Hannaford's lease agreement of an Australian commercial building which includes the relevant period through September 30, 2015 between Norma Hannaford and Burger King Australia, one of the largest fast food restaurant chains worldwide (effective at the time of alleged death), Norma Hannaford's Australian Federal Income Tax Returns for the December 31, 2015, and

Kevin Behrendt
November 7, 2022
Page 8

December 31, 2016 tax years including Norma Hannaford's signed attestation under penalty of perjury to Australian residency (on the Australian federal government tax returns) evidencing Australian residency on or before December 1, 2015 (Decl. Susan Hannaford; Sept. 14, 2022; Exh. 53) divesting this court of subject matter jurisdiction under *California Probate Code* section 201(a).

Moreover, the notarized proof of life from several years after the purported death, uncontrovertibly evidences Norma Hannaford did not pass away as falsely alleged in the Petition. Yet, despite this *overwhelming* evidence you still have not dismissed the petition.

As for malicious prosecution, the California Supreme Court has held that an attorney may be held liable for malicious prosecution if he commenced a lawsuit properly but then continued to prosecute it after learning it was not supported by probable cause (*Zamos v. Stroud*, 32 Cal.4th 958, 966-967 (2004) "[O]ne who continues a civil proceeding that has properly been begun or one who takes an active part in its continuation for an improper purpose after he has learned that there is no probable cause for the proceeding becomes liable as if he had then initiated the proceeding").

You stand in that position: you may have believed that you had grounds to sue but I have produced evidence that rebuts your client's entire case, establishes that Norma Hannaford did not die as falsely alleged in the fact of death petition and provided irrefutable notarized evidence, including recorded Homestead Declaration dated July 12, 2009 reflecting Susan Hannaford holds 100% interest in the real property; notarized and recorded Grant Deeds dated July 12, 2009 signed by Susan Hannaford under Durable Power of Attorney, notarized Grant Deeds dated April 26, 2017 signed by Norma Parry in her individual capacity along with notarized Uninsured Deed Affidavits dated August 18, 2016 signed by Norma Parry in her individual capacity, relinquishing any and all ownership interest in both properties referenced in the petition, along with the original Escrow Instructions and Purchase Agreements in the name of Susan Hannaford, 1098 IRS Mortgage Interest Statements, Share Certificate confirming Norma Hannaford holds no ownership interest in Zenith Development Inc., a California Corporation, Chase Bank Loan Agreements, Note and Deed of Trust(s) for both properties referenced in the petition, which have been held for over twenty years in the individual name of Susan Hannaford, a single woman.

I have also provided your office with official Los Angeles County Recorder's Office, Los Angeles County Tax Assessor and Los Angeles County Tax Collectors office records, indisputably evidencing Norma Hannaford does not own nor hold any title or interest in either of the properties referenced in the petition and that neither parcel is held by Ms. Norma Hannaford, divesting probate court of subject matter jurisdiction.

At this point, you have a legal obligation to dismiss this meritless case.

It seems, based upon the facts as I understand them, that Mr. Hannaford's real motivation in this matter is more truly expressed at Paragraph 4 of his Petition wherein he alleges that he believes that Ms. Norma Hannaford "...died intestate," and that accordingly, he is "entitled to fifty percent of Parry's estate."

Kevin Behrendt
November 7, 2022
Page 9

Mr. Hannaford is therefore operating under two mistaken beliefs: first that Ms. Norma Hannaford died intestate and second that she owned the two parcels of real property listed in the Petition at the time of her death (which has, incidentally, not yet happened).

We anticipate that Mr. Hannaford will give serious consideration to the fact that this Petition will not further his own financial interests in the manner he seems to be expecting.

Please dismiss the petition within the 21 day safe harbor period for Ms. Hartmann Esq., and Ms. Margolin's Motion for Sanctions and Dismissal, on or before November 8, 2022.

Should you refuse to dismiss the petition, in light of overwhelming evidence that the probate court lacks subject matter jurisdiction, please be advised that both Norma Hannaford and her daughter, Susan Hannaford (which your petition appears more directed towards) reserve the right to commence a substantial malicious prosecution and abuse of process lawsuit against you and your firm, including against Brett and Fiona Hannaford.

Very truly yours,

CARLSON & COHEN, LLP

By:

MORGAN M HALFORD, ESQ.

cc. Norma Hannaford; Susan Hannaford; Marquessa Margolin; Law Offices of Wendy E. Hartmann Esq.

# EXHIBIT D

## Career History

| Role | Employer | Where |
|---|---|---|
| Clerk | Hon. Lawrence K. Karlton, U.S. District Court for the Eastern District of California | None |
| Associate | Hall and Associates | None |
| Litigation Director | Center for Law in the Public Interest | Los Angeles County, California |
| Clerk | Hon. A. Howard Matz, U.S. District Court for the Central District of California | Los Angeles County, California |
| Legal director | Public Interest Investigations, Inc. | Los Angeles County, California |
| Directing attorney | Bet Tzedek Legal Services | Los Angeles County, California |
| V.P. of Legal Services | Bet Tzedek Legal Services | Los Angeles County, California |
| Judge | Superior Court of California | Los Angeles County, California |

FindLaw (https://www.findlaw.com/)

For Legal Professionals > (https://lp.findlaw.com/)

**Legal Forms & Services** ˅    **Learn About the Law** ˅    **Laws and Court Decisions** (https://caselaw.findlaw.com/)    **Blogs**(https://...

**Find a Lawyer** (https://lawyers.findlaw.com/)

Search for legal issues
Search for legal issues

Housing & Construction Defects    For help near (city, ZIP code or county)    🔍
For help near (city, ZIP code or county)

Los Angeles, CA

FINDLAW (//WWW.FINDLAW.COM)  /  LAWYER DIRECTORY (/)  /  CALIFORNIA (/LAWYER/STATE/CALIFORNIA)  /
LOS ANGELES (/LAWYER/STATEPRACTICE/CALIFORNIA/LOS-ANGELES)  /  CENTER FOR LAW IN THE PUBLIC INTEREST (//PROFILE/VIEW/2423654_1)  /  GUS T MAY



**Gus T May - Los Angeles, CA**
3rd Floor
10951 W Pico Blvd
Los Angeles, CA 90064
**Center For Law In The Public Interest**
**(/profile/view/2423654_1)**

✏ Write A Review

📞 **(310) 474-1933**
(tel:+1-310-474-1933)

Updated: 11/13/2001

Your Profile? Update Now
(http://profileupdate.findlaw.com/pu/login/login.html)

### Los Angeles Civil Rights Lawyer

When viewing a listing, consider the state advertising restrictions (/profile/html/state_restriction.html) to which lawyers and law firms must adhere, as well as our FindLaw.com Legal Directory disclaimer (//www.findlaw.com/company/disclaimer.html). Some lawyers publish comparative information regarding the services that they provide which may be subject to specific comparative communications restrictions (/profile/html/state_restriction.html#recom).

### Reviews ⓘ

**0 reviews**    ✏ Write A Review

---

### Map Location

(https://www.google.com/maps?
q=Center+For+Law+In+The+Public+Int...

### How Do I Choose A Lawyer?

Consider the following:

**Comfort Level** - Are you comfortable telling the lawyer personal information? Does the lawyer seem interested in solving your problem?
**Credentials** - How long has the lawyer been in practice? Has the lawyer worked on other cases similar to yours?
**Cost** - How are the lawyer's fees structured - hourly or flat fee? Can the lawyer estimate the cost of your case?
**City** - Is the lawyer's office conveniently located?

### Not Sure What Questions To Ask A Lawyer?

Here are a few to get you started:

- How long have you been in practice?
- How many cases like mine have you handled?
- How often do you settle cases out of court?
- What are your fees and costs?
- What are the next steps?

### Want To Check Lawyer Discipline?

It is always a good idea to research your lawyer prior to hiring. Every state has a disciplinary organization that monitors attorneys, their licenses, and consumer complaints. By researching lawyer discipline
(https://www.findlaw.com/hirealawyer/choosin...
the-right-lawyer/researching-attorney-discipline.html) you can:

- Ensure the attorney is currently licensed to practice in your state
- Gain an understanding of his or her historical disciplinary record, if any.
- Determine the seriousness of complaints/issues which could range from late bar fees to more serious issues requiring disciplinary action.

## Pearl Paradise

4.3 ★★★★★ (8)

Jeweler in Los Angeles, California · Open



OVERVIEW    **UPDATES**    REVIEWS    PHOTOS

📞 CALL     ◈ DIRECTIO...     ◁ SHARE     ◉ WEBSITE

Jewelry showroom spotlighting necklaces, earrings, bracelets & rings made with a variety of pearls.    ›



📍 10951 W Pico Blvd, Los Angeles, CA 90064

🕐 Open · Closes 4:30 PM  ⌄
Updated by phone call 2 weeks ago

🔒 🔍 pearl paradise



**OpenCorporates**
https://opencorporates.com › us_ca

## PP WEB PROS LLC :: California (US)

Free and open company data on California (US) company PP WEB PROS LLC (company number 201134410239), 10951 W PICO BLV...

**start.cortera.com**
https://start.cortera.com › research

## PP WEB PROS LLC Los Angeles CA, 90064 - Company Profile

Free Business profile for PP WEB PROS LLC at 10951 W Pico Blvd, Los Angeles, CA, 90064-2184, US. PP WEB PROS LLC specializes in:...

# Carlyle W Hall Jr

## Lives in Los Angeles, California

People / H / Hall / Carlyle Hall / CA / Los Angeles

# Carlyle W Hall Jr Age 79 (Feb 1943)



### Also Known As

Carlyle Washington Hall, Carlyle J Hall, Cary W Hall, Carlanne H Hall



### Current Address

10951 W Pico Blvd #3
Los Angeles, CA 90064
Los Angeles County
(Dec 1993 - Feb 2023)

2/1/23, 12:55 PM                    Andrew Ryan Henderson # 151365 - Attorne    nsee Search

 The State Bar *of California*

**Andrew Ryan Henderson #151365**
**License Status: Active**

Address: The Henderson Law Firm, 13101 W Washington Blvd, Ste 106, Los Angeles, CA 90066-5176
Phone: 310-461-0861 | Fax: 310-461-0800
Email: andrew@hendersonlawsc.com | Website: www.hendersonlawsc.com

More about This Attorney  ▾

**All changes of license status due to nondisciplinary administrative matters and disciplinary actions.**

| Date | License Status ℹ | Discipline ℹ | Administrative Action ℹ |
|------|------------------|--------------|--------------------------|
| Present | Active | | |
| 12/4/1990 | Admitted to the State Bar of California | | |

**Additional Information:**
- About the disciplinary system

Copyright © 2023 The State Bar of California

  

2/1/23, 12:56 PM                                    Kevin Ryan Behrendt # 211879 - Attorney Licensee Search

 The State Bar *of California*

**Kevin Ryan Behrendt #211879**
**License Status: Active**

Address: Dermer Behrendt, 13101 W Washington Blvd, Ste 407, Los Angeles, CA 90066
Phone: 310-614-2492  |  Fax: 310-954-9206
Email: Kevin@DermerBehrendt.com  |  Website: Not Available

More about This Attorney  ▼

**All changes of license status due to nondisciplinary administrative matters and disciplinary actions.**

| Date | License Status ⓘ | Discipline ⓘ | Administrative Action ⓘ |
|------|------------------|--------------|-------------------------|
| Present | Active | | |
| 12/6/2000 | Admitted to the State Bar of California | | |

**Additional Information:**
- About the disciplinary system

Copyright © 2023 The State Bar of California

